Page 2
Statement of Mr. Miller

Miller:      Yes.

Patton:      Okay. Number 2 anything you say or write may be
             used against you in a court of law, do you
             understand that, Kevin?

Miller:      Yes.

Patton:      Okay, you have the right to talk with a lawyer at
             any time before any questioning or answering any
             question or during any questioning, do you
             understand that sir?

Miller:      Yes.

Patton:      Okay, if you want a lawyer and cannot afford to
             hire one, you will not be asked any questions and
             the court will be request appoint a lawyer for
             you, do you understand that sir?

Miller:      Yes.

Patton:      Okay, if you agree to answer questions you may
             stop at any time and request a lawyer and no
             further questions will be asked of you, do you
             understand that sir?

Miller:      Yes.

Patton:      Okay, all of the five rights I just read to you,
             we've already read, went over this 10:00 this
             morning and you've placed your ah word yes and
             your initials on each one of those rights
             indicating that you understood is that correct?

Miller:      Yes.

Patton:      Okay, underneath that could you read that sentence
             underneath that for me?

Miller:      I have read the above explanations and the rights
             and fully understand them.

Patton:      Okay, do you fully understand your rights, sir?

Miller:      Yes.

Patton:      Okay, and you've signed your name underneath that
             indicating that you did?

Page 3
Statement of Mr. Miller

Miller:      Yes.

Patton:      Okay, and ah underneath that there's another
             sentence, could you read that sentence for me?

Miller:      I am willing to answer questions and I do not want
             any attorney at this time, my decision to answer
             any questions without having an attorney present
             is free and voluntary on my part.

Patton:      Okay, and you signed your name under that sentence
             also sir?

Miller:      Yes.

Patton:      And you willing to give a statement is that
             correct?

Miller:      Yes.

Patton:      Alright um first thing I'd like to go through with
             you sir is tell me what happen at the Inner
             Harbor, and I'd like for you to start from the
             beginning ah you watched over the game from the
             time that you guys met up, came to the Harbor
             something happen and everything after that, okay.
             And could you please do it in great detail for me
             sir?

Miller:      Ah I don't remember where we actually met up at
             but I remember Vic saying let's go to the to the
             Harbor and see some girls, talk to some girls.

Patton:      Where did you guys inaudible?

Miller:      Inaudible, I don't remember what kind and all
             that.

Patton:      Who all was?

Miller:      Me, Keith, Kevin, and Vic Lucky.

Patton:      Do you know Kevin's name ?

Miller:      Keith Scott, I don't know Vic's last name.

Patton:      And who's car were you in?

Miller:      Vic.

Page 4
Statement of Mr.Miller

| | |
|---|---|
| Patton: | Vic, and what type of car was it? |
| Miller: | Inaudible, I believe. |
| Patton: | And it was his car? |
| Miller: | Yes. |
| Patton: | And you left all all together? |
| Miller: | Yes. |
| Patton: | And who's idea was it to go to the Largo? |
| Miller: | Vic. |
| Patton: | Vic, and why did he want to go there? |
| Miller: | To meet some girls. |
| Patton: | Okay, alright do you know what time it was when you left Largo to come down to the Inner Harbor? |
| Miller: | All I know is night time. |
| Patton: | Okay, well tell me what happened? You got in the car and? |
| Miller: | Got in the car and went to the Harbor. |
| Patton: | Where did you park at? |
| Miller: | Parked in the garage, right across the street from the Harbor. |
| Patton: | Do you know the name of the garage? |
| Miller: | No I do not. We went to the Harbor, walked around went into this little bar, got a couple of drinks, met some couple girls in there, went outside left them girls, walked around the Harbor outside near the water. We saw some girls on a bench or they or they seen us I don't remember. |
| Patton: | How many girls was it? |
| Miller: | Three. And we was talking to them, I wasn't, they was, they was talking and um. |

Page 5
Statement of Mr. Miller

Patton:     Who's they, who was talking?

Miller:     Vic, Vic was mainly talking to this one girl we
            just lotty dottying with the other girls and um
            then three then three boys came up on us, talking
            about yall like these boys, yall don't like yall
            have boyfriends.

Patton:     They came up to the girls and started talking to
            the girls?

Miller:     Yeah, talking to the girls saying what yall got
            boyfriends, why yall didn't want to talk to us, I
            thought they knew the girls how they was talking,
            then they was then they was kept getting smart, I
            don't remember all what they was saying but they
            kept getting smart, I kept saying what ever, what
            ever, what ever then um.

Patton:     What was he saying exactly, who was doing most of
            the talking?

Miller:     It was the big light skin dude, he kept saying all
            you can tell a weed boys, I don't know he just
            kept getting smart, then the girls pulled Vic away
            like come on, then they like come on yall, so we
            walking away.

Patton:     Which way were you walking towards the parking
            garage or back towards the?

Miller:     Towards the garage, but we wasn't leaving  we was
            walking towards that way and um then one of them
            ran back and pointed at me saying which one kept
            talking trash, pointing at me and then one of the
            little dudes like him pointing at me saying him
            then the big dude came in my face, got in looked
            down inaudible, turned around and something. I
            don't remember how we got to fighting, for real I
            remember um the dark skin dude came in my face,
            Vic, I know I don't know what happened the light
            skin dude was towards to me Vic punched him he
            came to me that's how I know he didn't get
            stabbed, he came to me after Vic punched him the
            other dude, I know I swung at the one dude, we
            both had our hands up, I swung at him, he like
            that's all you got, he said that then I like and
            then the light skin dude came in my face after Vic
            punched him. So I know,I don't know about all that
            skirting stuff. And then he stopped and put his

Page 6
Statement of Mr. Miller

hands down and called his friend like come here
come here, oh when Vic punched him he ran and I
was standing there by myself, Twin standing
towards the side they didn't even get in it, then
I know dude came up to me I had two of them in my
face after Vic punched him and then big man that
one yall claim he got stabbed put his hands down
call his friend like come here, Twin start
calling me like come on come on we ran and left we
ran to the car, got in the car and went home. Vic
never said he stabbed, I never knew somebody got
stabbed until Twins got locked up, called me
and told me everything and they wanted me to be a
witness.

Patton:     Alright now let's just go back over this a little
            bit, alright now you guys are?

Miller:     The girls was laughing.

Patton:     Inaudible some where and you see three girls
            sitting on a bench?

Miller:     I never, I never walked to the bench, I don't know
            I know we met three girls after we came.

Patton:     Now was there any guys talking to the girls when
            you guys approached the girls?

Miller:     No.

Patton:     No, did you see the big guy and his friends before
            you guys approached the girls?

Miller:     Oh we seen them some some boys rapping but I don't
            know it was about twenty of them was rapping and
            big man was watching them, I was watching all them
            rap but we ain't have no altercation or talk to
            them or nothing like that.

Patton:     Right, so now you said that Vic, he approached the
            girls first?

Miller:     After we came out inaudible, after we came out the
            um the um little Baha thing, I think he approached
            them after that.

Patton:     So you guys are talking to the girls?

Page 7
Statement of Mr. Miller

Miller:        Right

Patton:        And Vic is doing most of the talking you said.

Miller:        And talking to the one girl.

Patton:        Okay, are you talking to any of the girls?

Miller:        I think I talked to one of them, but I ain't not no trying to get a number.

Patton:        So inaudible guys. So while you're talking or while your friend and you are talking to the girls you say that the big guy, he just came over?

Miller:        Talking to the girl, not us at first.

Patton:        Now were they sarcastic, were they cursing at them?

Miller:        He was drunk I think, think he was drunk.

Patton:        What did he say, do you remember what he said to the girls?

Miller:        He was saying I ignoring him at first, he was saying did yall have boyfriends and kept saying somewhere of where he's from, kept saying some where's he's from, I don't know where he from.Kept saying where he from.

Patton:        I mean did the girls, I mean was he being rude and sarcastic to them or?

Miller:        What to the girls?

Patton:        Yes.

Miller:        Ah I can't really say, now he kept getting smart with me and my friends.

Patton:        Okay, they started talking to you guys cause you guys were talking to, I mean what was the gist of, why were they upset or why were they ?

Miller:        Cause the girls were talking to us and not them. At first I thought they knew them until we stop having a conversation and we said we would find out they ain't know them.

Page 8
Statement of Mr. Miller

Patton:     Now you said that you started to walk away?

Miller:     Yeah the girls pulled on me like come on.

Patton:     Alright so the girls are walking, all three of the girls are walking with Vic?

Miller:     No the one girl was walking with Vic, and the two girls was walking with us three.

Patton:     Yall walked away?

Miller:     Yeah cause Vic and the other girl was inaudible.

Patton:     And where was the the guys?

Miller:     They stayed there.

Patton:     Stayed by the bench?

Miller:     By the bench while we walking up they ran back up on us pointing at me.

Patton:     Okay, who was pointing at you?

Miller:     One of the dark skin boys, I don't know which one I know he was dark skin inaudible. Matter of fact it was the smallest dark skin one pointing at me like him him him.

Patton:     You were saying you because you?

Miller:     I kept saying whatever, every time he would say his name I would say what ever.

Patton:     Okay so when he said something sarcastic, you'd go sarcastically whatever?

Miller:     What ever.

Patton:     Alright igging him on. Alright okay so he now you guys stop and he get in your face?

Miller:     Yes.

Patton:     Right, the the one short dark skin guy, so what happens at that point? You guys fight, what?

Miller:     We never fought, inaudible he was like I don't know how, all I know is the big man came in my

Page 9
Statement of Mr. Miller

face.

Patton:     Naw, I'm talking about the short guy right now that came in your face. Did the big guy come with him, they came together?

Miller:     Yeah he was like him he says I don't I don't actually recall what he said all I remember is him pointing at me like him, he the one, talking trash they were like him, I don't even know what big man said, I don't remember.

Patton:     Alright, so when they got to you what did he do?

Miller:     I know I turned to Vic and then turned, then I had the dark skin dude in my face I don't I don't understand, I don't remember all the details.

Patton:     So you saying that the big guy, try to understand this, when the big guy and the dark skin guy are initially talking to you?

Miller:     Right.

Patton:     Threatening you?

Miller:     Right.

Patton:     And then you said the big guy turned to Vic and said something to Vic?

Miller:     I believe so, and then he turned back.

Patton:     And then he turned back towards you.

Miller:     And then Vic.

Patton:     And then Vic.

Miller:     But I know my hands were up, and the dark skin dude when the big guy came to me, naw I seen Vic punch him.

Patton:     Alright so what I'm trying to determine when the punch took place, now did the big guy big guy comes to you and the dark skin guy comes to you then they each are pointing at you saying him him, then the big guy turns around towards Vic, steps towards Vic.

Page 10
Statement of Mr. Miller

Miller:      No he came to me first.

Patton:      Naw I'm saying after he stepped towards you, you
             said he, the big guy and the dark skin guy were
             first in  your face.

Miller:      Right.

Patton:      Then you said that he turned towards Vic.

Miller:      Yeah, but they ain't, I don't know if they did
             anything cause the.

Patton:      Then he turned back towards you?

Miller:      Right, and Vic punched him.

Patton:      Vic hit him in the neck or hit him in the face?

Miller:      Vic punched him.

Patton:      Then what did he do after Vic punched him, how did
             describe?

Miller:      He came, after he punched him.

Patton:      Did he put his hands on his face, was he bleeding?

Miller:      Naw, not yet, he rocked him like stunned him, I'm
             like I'm like yeah, I'm like I'm like damn.

Patton:      He was staggering a little bit, like he was going
             to fall down, inaudible hit a little harder?

Miller:      Yeah look like, and then um he came back towards
             me.

Patton:      Did you hear him hit?

Miller:      Yeah he hit him bop.

Patton:      He hit him real hard?

Miller:      Yeah and then Vic ran after he, soon after he
             punched him he ran. And then big man came towards
             me after Vic punched him and I swung on, I don't
             know how but I swung on the dark skin dude and
             the big man told the dark skin, so the dark, the
             big man had to been behind me inaudible, I know
             some kind of way they almost jumped me. The twins

Page 11
Statement of Mr. Miller

was looking, I'm mad at them cause I'm about to get jumped and big man just stopped and has his hand on his neck, stop said call his friend over, he friend had stopped, went over to him turned like come on come on inaudible and they ran off and the girls were laughing, we laughing and run damn Vic can hit.

Patton:   Did the girls go tho the car with yall?

Miller:   Naw, we left.

Patton:   Yall ran, left the girls?

Miller:   Yeah we ran off at twin car.

Patton:   So Vic hits him and then runs?

Miller:   Um hum straight run.

Patton:   Now do you see where he he running towards what the cars?

Miller:   Yeah we met up with him like at the corner or some shit, he was gone.

Patton:   And then all you guys got in the car together?

Miller:   Right.

Patton:   Now when you guys met up with Vic, what did he say what did yall talk about?

Miller:   Inaudible can hit like a motherfucker.

Patton:   And then he said?

Miller:   He start laughing.

Patton:   And then what you guys do after that?

Miller:   And then we all went home, we all went home.

Patton:   Now did you see Vic with any type of weapon or anything in his hand or pocket knife, ah fingernail clipper knife anything?

Miller:   No.

Patton:   Did he say he had something in his hand, keys?



Page 12
Statement of Mr, Miller

Miller:    Naw I know I know he ain't have car keys in his hand, but I know he had keys inaudible got there, but I ain't know he stabbed him, I thought he just punched him, he never told us he stabbed him.

Patton:    So you guys, he didn't say anything about him having any kind of weapon in his hand when you guys get in the car?

Miller:    No he did not.

Patton:    And then you guys get in the car and drive and drive back to Largo, and you don't remember anything, you don't know anything about this, didn't hear anything about this until after the twins were arrested?

Miller:    Right.

Patton:    You see Vic after that, before the twins got arrested?

Miller:    He was already locked up.

Patton:    Vic was?

Miller:    Yes. Hold on there was something else naw.

Patton:    Did you know those girls?

Miller:    No I did not.

Patton:    Did ah did the girls ever call you?

Miller:    No they did not.

Patton:    Did did did the twins say the same thing about the girls inaudible.

Miller:    No they did not.

Patton:    Did they ever call the girls? Did they ever give them their number?

Miller:    I think they gave them their number or that was the other girl, I don't we met three girls that night, three sets so I don't know if that was the set they gave their number to or not.

Page 13
Statement of Mr. Miller

Patton:          Now when all this is going on the altercation
                 part of it, did you hit the big guy, grab his
                 neck, did you hit anybody?

Miller:          No I did not, I didn't touch him, I didn't touch
                 him, I ain't swing on at, I swung at the dark skin
                 dude that had his hands up in my face.

Patton:          Um hum. Now did Kevin or Keith, Scott, the twins
                 did they hit anybody?

Miller:          No they did not, they wasn't even, they was
                 spectators you might as well say.

Patton:          They hit the big guy?

Miller:          No they did not. It was one swing two swings, I
                 swung at the dark skin dude, Vic swung at the
                 light skin, I don't know if the light skin dude
                 swung at Vic or not because the light skin person,
                 I meant the dark skin dude was in my face, and I
                 had my back towards them.

Patton:          The exchange between Vic and the big light skin
                 guy, how many punches are we talking?

Miller:          From what I seen one, Vic.

Patton:          Vic hit him one time and then ran?

Miller:          And ran, I thought he just inaudible that's the
                 truth.

Patton:          I'm sorry?

Miller:          I said that's the truth I gave you he just punched
                 him inaudible.

Patton:          I didn't understand you mumble.

Miller:          I said I thought he could punch real hard, he he
                 he  he hit him whop.

Patton:          He hit him real hard?

Miller:          Yeah and ran.

Patton:          And ran?

Miller:          Studded him but.

Page 14
Statement of Mr. Miller

Patton:        When you say studded, he was stumble?

Miller:        Studded and then he came towards me after he
               punched him.

Patton:        When he came towards you did you hit him?

Miller:        No I did not, he stopped after he came towards me,
               looked like I was about to get jumped for a
               second, main man put his hands down called his
               friend like come here, he went to his friend or
               not he but the friend went to the big man and they
               called the twins called me like come on and that
               was it.

Patton:        Alright, at about ah 11:25 I showed you a photo
               line-up card is that correct?

Miller:        Yes it is. Yes.

Patton:        And on that photo line-up card it contains 6 black
               and white pictures is that correct?

Miller:        Yes.

Patton:        On that same card did you identify anybody?

Miller:        Vic.

Patton:        You identified Vic and where is his picture up
               here on that card?

Miller:        In the right hand bottom side.

Patton:        Bottom right picture?

Miller:        Yes.

Patton:        Did you sign your name above this picture?

Miller:        Yes.

Patton:        Did you put the date on there?

Miller:        Yes.4-7-99.

Patton:        Did you put a time on there?

Miller:        11:25 a.m.

Page 15
Statement of Mr.Miller

Patton:         Alright, on the front of the card did you write
                something on the front of the card?

Miller:         Yes I did.

Patton:         Can you read what you wrote on the card for me
                please?

Miller:         Ah Vic punched the man in the in the right side
                of his neck and ran, me and the twins followed him
                to the car, we laughed and talked about what
                happen, Vic never said that he stabbed him.

Patton:         And you signed your name on that?

Miller:         Yes I did.

Patton:         Okay, there a couple of spots where you ah
                scratched out something.

Miller:         I signed above every scratch I made.

Patton:         Okay. Now since the twins have been locked up,had
                you talked to them?

Miller:         Ah at least 3 times, they wanted some lawyer money
                and wanted me to be their witness to the case.

Patton:         So tell me about what you guys talked about.

Miller:         We talked about they wanted some.

Patton:         When they asked you, excuse me, which twin called
                you Kevin or Keith?

Miller:         They together right now.

Patton:         Okay.

Miller:         They in the same cell. They um I talked to both of
                them.

Patton:         Okay.

Miller:         One come on, then the other one come on, but we
                mainly don't talk about what happen, we already
                discussed that the first time we talked.

Patton:         Okay, when the first time you talked, what did you

Page 16
Statement of Mr. Miller

talk about?

Miller:          Um we talked about they need fifteen hundred
                 dollars for a lawyer and they wanted some um
                 video, they wanted me send them some um tapes or
                 some, yeah tapes, I had to buy the tapes and send
                 the receipt with the tapes.

Patton:          What kind of tapes, cassette tapes?

Miller:          Yeah cassette tapes ah they like no limit
                 soldiers and um.

Patton:          And what did they, what did you guys talk about?

Miller:          Just talked about their babies coming in June and
                 they about to get an apartment this month or their
                 girlfriends going to be there so when they come
                 home they they got somewhere to stay. You know.

Patton:          Did they talk about the incident?

Miller:          We was on the three way. Not over the phone no.
                 Yeah yeah yes we did that was over the phone we
                 talked about that over the phone.

Patton:          What did yall talk about this thing down at the
                 Inner Harbor.

Miller:          Hold up, we didn't talk about the case over the
                 phone, we couldn't talk, I know their girlfriends
                 told me everything about their statements and
                 stuff, their girlfriends told me that's that's why
                 I was on the phone with their girlfriends after
                 they hung up, they told me about their statements
                 and everything they said, they wrote me a letter.

Patton:          What did they say in the letter?

Miller:          Same thing about the tapes and I don't think they
                 really need a lawyer but they needed um some
                 lawyer money, they didn't say how much then, they
                 wrote um what happened, what they said happened
                 how they, they wrote how they got to the Harbor,
                 they ain't write about what what happened, they
                 just wrote that they saying that they got to the
                 Harbor.

Patton:          Did they tell you something different then what?

Page 17
Statement of Mr. Miller

Miller:      Yes they did.

Patton:      Then what you told us?

Miller:      Yes they did.

Patton:      What did they tell you?

Miller:      They said they got to the Harbor in a white car by this man named Paul and they still wanted me to be their witness.

Patton:      Why do they, why do they say that do you know, when it wasn't true?

Miller:      I guess they trying to be as innocent as they can be.

Patton:      Okay is there anything else about this incident that you want to tell me that I've not asked you?

Miller:      Um you didn't ask me did I stab him, and I did not. You didn't ask me was there a knife, I didn't see a knife. Um you didn't ask me did I see blood, you asked me before the tape recorder came on but you ain't ask me while the tape recorder on did I see blood inaudible.

Patton:      Did you see blood coming from the tall light skin guy inaudible or anything?

Miller:      No I did not.

Patton:      After after ah Vic hit him?

Miller:      No I did not.

Patton:      Did you see Vic with a knife or any type of weapon in his hand?

Miller:      No I did not.

Patton:      Did I ask did you stab him?

Miller:      No you didn't ask me that either. And I did not stab him. You you didn't even ask me if I was innocent.

Patton:      Are you innocent Kevin?

Page 18
Statement of Mr. Miller

Miller:        Yes I am innocent.

Patton:        Okay. Is there anything else that you want to tell me that I didn't ask you?

Miller:        Yes I swung at the dark skin person in self defense cause I I was about to get jumped, so I swung at him and if I thought the big man got stabbed how can he get stabbed after getting punched in his neck and still coming towards my face trying to fight me and then stop and call his friends and then I could see a little bit when he stopped and called his friends but you saying how the way he got stabbed he should have just dropped dead and he didn't he just came towards my face and you told me that yall have surveillance cameras at the Inner Harbor showing everything that happen, then you told me that yall should have the females testify or not testify about yall have them and they test, they statement, yall should show that they laughed after Vic punched him.

Patton:        Did you see a little blood?

Miller:        I saw a little blood come out of his nose.

Patton:        A little blood come out, that's after?

Miller:        When Vic punched him.

Patton:        Correct you saw a little bit of blood?

Miller:        That's that's not when he first came towards me that's after.

Patton:        After Vic hit him?

Miller:        After,no no after he called his friend like come here, come here.

Patton:        So you saw a little bit of blood coming out of his nose?

Miller:        Coming out of his nose.

Patton:        Alright ah the time now is approximently 12:05 and this will conclude the interview.

Page 19
Statement of Mr.Miller

This tape was transcribed by CSO Angela Powell on 5-22-99.

# Exhibit 13

**DISTRICT COURT FOR MARYLAND FOR** ............................................ (City/County)

LOCATED AT (COURT ADDRESS)

DISTRICT COURT CASE NUMBER: 5E000 941

RELATED CASES:

COMPLAINANT/APPLICANT

Name: Michael B. Washburn

Address (Number and Street)

City, State, and Zip Code        Telephone

Agency, Sub-Agency, and I.D. #    (Officer Only)

DEFENDANT

Name: Victor Gloria

Address (Number and Street)

City, State, and Zip Code        Telephone

CC# ...........................................

DEFENDANT'S DESCRIPTION: Driver's License # ................................. Sex M Race H Ht 5-1 Wt 150

Hair BL Eyes Br Complexion .......... Other .......... D.O.B. ........... ID ...........

## APPLICATION FOR STATEMENT OF CHARGES        Page 1 of 2

I, the undersigned, apply for a statement of charges and a summons or warrant which may lead to the arrest of the above named Defendant because on or about 9/27/96  11:45 PM

at Applebees  7300 Baltimore Ave  College Park, the above named Defendant
        Place
Assault with a rock leading to injuries around and

(Concise statement of facts showing that there is probable cause to believe that a crime has been committed and that the Defendant has committed it)

including Right eye requiring multiple stitches. While leaving Applebees restaurant, the defendant confronted me and the witnesses listed below. He asked if we had a problem. Our answer was no and we continued to get into our car and leave. On our way out, the defendant

(Continued on attached .......... pages) (DC/CR 1A)

I solemnly affirm under the penalties of perjury that the contents of this Application are true to the best of my knowledge, information and belief.

Date: 9/28/96

Officer's Signature

I have read or had read to me and I understand the Notice on the back of this form.

Date: 9/28/96

Applicant's Signature: M. B. Washburn

Subscribed and sworn to before me this 28th day of Sept, 19 96

Time: 5:30 P.M   Judge/Commissioner .......... I.D. 5057

I understand that a charging document has been issued and that I must appear for trial ☐ on ..........
                                                                                      Date
at .......... ☒ when notified by the Clerk, at the Court location shown at the top of this form.
    Time

Applicant's Signature: M. B. Washburn

☐ I declined to issue a charging document because of lack of probable cause.

Date                                    Commissioner        I.D.

Witnesses' Names and Addresses:

Name: Jonathan Washburn        Number and Street/Agency/Sub-agency/I.D.        City, State, Zip

Name: Marut Singer        Number and Street/Agency/Sub-agency/I.D.        City, State, Zip

Name: Cassandra Strus        Number and Street/Agency/Sub-agency/I.D.        City, State, Zip

TRACKING NUMBER

DC/CR 1 (Rev. 8/94)                                            COURT COPY

**DISTRICT COURT OF MA(  `ND FOR** ........................................( ...................................... (City/County)

| LOCATED AT (COURT ADDRESS) | | ST 0 0 0 5 4 9 9 1 |
| --- | --- | --- |
| | | DISTRICT COURT CASE NUMBER |

DEFENDANT'S NAME (LAST, FIRST, M.I.)

Gloria, Victor

### APPLICATION FOR STATEMENT OF CHARGES (CONTINUED)   Page _____ of _____

Came towards the Car and threw a rock, hitting me on the Right side of my face at the right eye, shattering my glasses Causing Multiple lacerations and trauma to my right eye. ~~drivers~~ Next, the defendant walked to the ~~drivers~~ side of the Car, and pulled out a knife and asked the driver "You want Some of this shit!". The driver told him "No" and proceeded to the entrance to Applebes Restaurant. The incident was also witnessed by a female aquaintance of the defendant An officer filled out a report # 96-271-1594 - Officer Cpl. A. Graham # 1598.

9/28/96

Date

M. Grff Wll

Applicant's Signature

96/00/752056

TRACKING NUMBER

DC/CR 1A (Rev. 8/94)

# Exhibit 14

2 FEB 99

U.S. Park Police CIB (Office █████████

Det. Ryder ABT

*Det. Joe Green (PSR # ██████████
(office ████████

primary

JAN 96 — 3/B/r VICTIMS
shot to death rt BW Pkwy

Dec '98 — 3 ARREST MADE

1) ███████ Haynes
PG County ID# 805870
PG County Sheriff ID# 261890

2) ██████ Hess, m/b/20's

3) Victor Gloria    SID# 1565443
AKA: Victor Morales FBI# 953670RA9
AKA: Pretty Vic
DOB: █████



ARRESTS in following jurisdictions:
1) Maryland — A.A. County
                — Howard County
2) Virginia
3) New York

Det. Joe Green H
[Front Desk]

# Exhibit 15

For
Baltimore City
Police

Det's Thomas
Det. Patton

Will Pick up on
2/4/99

**REQUEST FOR PHOTO SPREAD**

Offense _Homicide_      CCN _2243-96_

Location of Off. _Rt 197_      Date of Off. _1-27-96_

Filler Photographs Selected by Investigator:

1. _45067_    2. _45100_    3. _44963_    4. _44933_
5. _45147_    6. _43739_    7. _43701_    8. _Suspect_
9. _____    10. _____    11. _____    12. _____

Special Instruction: _For Baltimore City_

Requested By: _Jn Green_      Date: _2/8/99_

Date Completed: _2/3/99_      ID Tech: ▓▓▓▓



USMS  35417037   FBI NO.  953670RA7   DOB ████

NAME  GLORIA, VICTOR  NMN

SEX M   RACE B   HAIR BLK  EYES BRO  HGT 5'7   WGT 150












# Exhibit 16

WITH THE INVESTIGATOR SAYS SHE HASN'T BEEN KEPT INFORMED? WE HAD QUITE A CONVERSATION IN THIS AREA!

③ WE WILL HAVE TO DISCUSS THE ENTIRE CONVERSATION. + TOLD HER YOU WOULD CALL HER. ④ SHE HAS INFORMATION REFERENCE TO SUSPECTS.

Case Agent —
SA Brad Sheafe
Calverton Office

Case Agent
for Victoria Gloria
SA Brad Sheafe
FBI Calverton
office

10 Feb 99

# Exhibit 17

Photo Line up of victim Gloria —

Victor Gloria "Vick"
B/M/ ███████ ㉔
████████████████
SID # 1565443
FBI # 95367aRA7

Currently charged with murder
and is being held by U.S. Marshall's

Det Joe Green P/S Park Police

Kevin Anthony Miller
DOB ██████████ M/B/29
████████████████

SID 1628168
FBI 425 329 KAS

Arrest Laurel PD 9500023 - 3-22-95
Arrested PG County 1-8-96

Kevin → 2nd unk subject with "Vick"
          Kevin Miller was driving car

Keith → Kevin Scott was driving car
          had recently painted car from
          subject known as Paul

          did not indicate there was a
          second subject with "Vick"

# Exhibit 18

1 set leg IRONS   LT. LEWIS
1 set. leg IRON'S   Sgt. NOLANS
1 set Cuffs — THAWER (Homicide)
1 set Cuffs — D. TOWNSEND VCTF

3-B-F'S
JAN 96

AKA: Victor MORALES
Victor GLORIA (Pretty Vic)
SSID # 1565443

FBI #
95367 RA7

A A. Court
Howard
N. Yo
VA
M.D.

T/O#
S. PARK POLICE (CIB)
Det. RYDI ABT
T/O#

ATTORNEY:
Det. Joseph
Green
Mgr.

Willis HAYNES
PG County ID 805870
PG " Sheriff ID#
261890

DUSTIN HESS
M/B

# Exhibit 19

— Things to Do —

① Call Det. Joe Green
       U.S. Park Police

② Request Photo Line up of
Kevin Anthony Miller
SID #

③ Request BWRit for keith
and Kevin Scott          SID
~~20 April 99   keith Scott (    )~~
~~22 April 99   kevin Scott (    )~~

~~④ Set up CVSA for~~
~~Kevin and keith Scott.~~

⑤ Show Photo Line up of
Kevin miller to David Bixby

# Exhibit 20

Directions to U.S. Park
Police

S/B

295 — south to Wash. D.C.

get off Howard Rd.
EXIT

make a Right onto Howard Rd.
go through traffic light
to South Capital St. Bridge
go over Bridge (exit to right)
move to right
Service Rd. . to M St. make
a Right,
go to 2nd traffic light make a
Right turn into the Navy Yard.
Bldg. 136

# Exhibit 21

8661

Re Victor Gloria.

1. I spoke to AUSA Deborah Johnston concerning Victor Gloria on 4/12/99. She told me that Gloria pled guilt to AAF in triple murder case + that his plea agreement is sealed. The two Co-D's Willis Haynes + Dustin Higgs have trial date of 2-7-2000. Because plea agreement is sealed, she could not tell me if Gloria is going to testify agt Co-D's.

2. AUSA Johnston stated that it is possible that Co-D's - Scott, Scott + Miller are blaming Gloria because they are friends of D's in her case especially Haynes. She suggested that we talk to

① Joe Green Park Police
   B - ████████████████

② Brad Sheafe - FBI
   B - ████████████████

   - they could give us background on case.

3. After we talk to these officers, we will decide on next course of action, that is either writ Gloria + charge him or talk to his lawyer about the case.

4. Please call me.

Mark Cohen

# Exhibit 22

 File Copy



# CIB - HOMICIDE
### POLICE DEPARTMENT
### BALTIMORE, MARYLAND
### Progress Report

**TO:**  Commanding Officer
Homicide Unit

**FROM:**  Detective Patton, Robert Detective
& Hastings, Kirk  Detective

**SUBJECT:**  Progress Report
Homicide Investigation

**SUSPECTS**(Name, DOB, Race, Sex, Age, Address):

| | | |
|---|---|---|
| Scott, Kevin  Lee ▮▮ | B/ M 23 | ▮▮▮▮ |
| Scott, Keith   Michael ▮▮ | B/ M 23 | ▮▮▮▮ |
| Gloria, Victor ▮▮ | B/ M 23 | ▮▮▮▮ |

**VICTIMS**(Name, DOB, Race, Sex, Age, Address):

| | | |
|---|---|---|
| Creighton, Martrelle  Lamar ▮▮ | B/ M 20 | ▮▮▮ |

**OCCURRED:**  07/18/98  0206
301  Light Street

| | | | |
|---|---|---|---|
| **CC Number:** | 981G13258 | **Case Number:** | 98H0172 |
| **District:** | CD | **Post:** | 112 |

FOLLOW UP INVESTIGATION SUSPECT RE-INTERVIEW

In reference to the captioned investigation four individuals have been identified as being involved in the captioned murder. Three of the suspects, Kevin Scott, Keith Scott and Kevin Anthony Miller have since been arrested and are currently being held without bail at C.B.I.F.

The Fourth suspect, Victor Gloria is currently in Federal custody and is being held in reference to a 1996 triple Homicide that occurred on the Baltimore Washington Parkway. Per the U.S. Attorney's office Victor Gloria had plead guilty and is slatted to testify against his co-defendants, Willis Haymes and Dustin Higgs who are reportedly are close friends with the Scott brothers and Kevin Miller.

Your Investigator will note that when the Scott brothers and Kevin Miller were interviewed at the Homicide office all three implicated Victor Gloria  stating that Gloria was the only person who had engaged the victim in physical altercation. All three stated that Victor Glory punched the victim once in the face or neck. All three stated that Victor Gloria was not armed with any type of knife or weapon when they witnessed the altercation.

Date: 04/21/99

The Scott brothers along with Kevin Miller stated that after Victor Gloria punched the victim he immediately ran from the area. Your Investigator will note further and in reference the statements of the Kevin Miller and the Scott brothers. Your Investigator noticed that their statements are very similar in nature and appeared to have been rehearsed.

This assumption was supported when Kevin Miller stated during his initial interview that the Scott brothers called him from Jail several times and advised him that your Investigators were looking for him and that he would probably be arrested and charged with Murder.

The U.S. Attorney's Office was advised by A.S.A. Cohen that Kevin Miller and the Scott brothers had implicated Victor Gloria in the captioned Homicide. The U.S. Attorney reported that during course of their Investigation they received information that the Scott brothers and Kevin Miller were close friends with Victor Gloria's co-defendant, Willis Haymes and Dustin Higgs and were aware that Victor Gloria was a Federal witnesses and planed to testify against Hymes and Higgs. The U.S. Attorney believes that the implication of Victor Gloria by Kevin Miller and the Scott brothers is their form of retaliation against Gloria.

Your Investigators along A.S.A. Cohen believes that the A.U.S.A. is on track with their assumption. Your Investigators support is based on eyewitness information that Victor Gloria ran from the scene prior to the stabbing. The eyewitnesses identified Kevin Anthony Miller via photographic line up as the stabber and the only person seen engaging the victim in physical altercation.

In an effort to finally discern who of the four listed suspects actually stabbed the victim. Your Investigator in concert with A.S.A. Cohen believe by aggressively re-interviewing the Scott brothers we could ultimately convince them to tell the complete truth. This would clear up the apparent inconsistencies in their statements and ultimately discern from them who the actual stabber was which would corroborate the other eyewitnesses.

In addition A.S.A. Cohen indicated that if the Scott brothers cooperated and changed their statements and clear up the inconsistencies he wanted to administer a C.V.S.A. examination to verify their new statements. Your Investigator ultimately spoke with Detective J.T. Brown and tentatively scheduled the examinations for the 21st of April 1999 and obtained the writs for the same date.

On the 21st of April 1999 your Investigator in concert with Detective John Thanner transported Keith Scott and Kevin Scott from the Baltimore City Detention Center to the Homicide office for re-interview.

Once at the Homicide office the Scott brothers were placed in separate interview rooms and advised of their rights. Both refused to waive their rights and stated that their attorney's told them not to talk to the Police and to stand by their original statements.

Your Investigators explained in detail the circumstances surrounding the re-interview and the need for them to clear up the apparent inconsistent information that they initially provided in their original statements. Both brothers ultimately refused to cooperate and indicated that they were going to stand by their original statements and further refused to submit to a C.V.S.A. examination.

Your Investigators will note that the interview at this point had to be terminated and no new information was gleaned. Your Investigator at this point transported the Scott brothers back to B.C.D.C. and notified A.S.A. Cohen of the aforementioned results.

SUPERVISOR

DETECTIVE ROBERT PATTON

Respectfully,

**CIB - Homicide**

Page: 2

Date: 04/21/99

# Exhibit 23

(MURDER, DW)

# State of Maryland,

City of Baltimore, to wit:

| | |
|---|---|
| The State of Maryland | Date of offense: __July 18, 1998__ |
| -vs- | |
| ✓ KEITH MICHAEL SCOTT | Location: __301 Light Street (Sidewalk)__ |
| KEVIN LEE SCOTT | Complainant: __MARTRELLE LAMAR CREIGHTON__ |
| Defendant(s) | |

## I N D I C T M E N T

The Jurors of the State of Maryland for the body of the City of Baltimore, do on their oath present that the aforesaid DEFENDANT(S) late of said City, heretofore on or about the date of offense set forth above, at the location set forth above, in the City of Baltimore, State of Maryland, feloniously, wilfully and of deliberately premeditated malice aforethought did kill and murder one ____Martrelle Lamar Creighton_____, contrary to the form of the Act of Assembly, in such case made and provided, and against the peace, government and dignity of the State.
(Art. 27, Sec. 616; 407-413 Common Law) 2 0900

### SECOND COUNT

And the Jurors aforesaid, upon their oath aforesaid, do further present that the aforesaid DEFENDANT(S), late of said City on the said date(s) at the said place, at the City aforesaid, unlawfully did wear and carry concealed upon and about (his/her/their) person(s), a certain dangerous and deadly weapon to wit: ____Sharp Object_____; contrary to the form of the Act of Assembly in such case made and provided, and against the peace, government and dignity of the State.
(Art. 27, Sect. 36) 1-5202

### THIRD COUNT

And the Jurors aforesaid, upon their oath aforesaid, do further present that the aforesaid DEFENDANT(S), late of said City, on the said date(s), at the said place, at the City aforesaid, unlawfully did wear and carry openly with the intent and purpose of injuring the aforesaid Complainant, a certain dangerous and deadly weapon to wit: ____Sharp Object_____; contrary to the form of the Act of Assembly, in such case made and provided, and against the peace, government and dignity of the State.
(Art. 27, Sec. 36) 1-5200

_Patricia C. Jessamy_

The State's Attorney for the City of Baltimore

# Exhibit 24

(MURDER, D/W)

# State of Maryland,

City of Baltimore, to wit:

The State of Maryland

-vs-

KEVIN ANTHONY MILLER

Defendant(s)

Date of offense: __July 18, 1998__

Location: __301 Light Street (Sidwalk)__

Complainant: __MARTRELLE LAMAR CREIGHTON__

## INDICTMENT

The Jurors of the State of Maryland for the body of the City of Baltimore, do on their oath present that the aforesaid DEFENDANT(X) late of said City, heretofore on or about the date of offense set forth above, at the location set forth above, in the City of Baltimore, State of Maryland, feloniously, wilfully and of deliberately premeditated malice aforethought did kill and murder one __Martrelle Lamar Creighton__, contrary to the form of the Act of Assembly, in such case made and provided, and against the peace, government and dignity of the State.
(Art. 27, Sec. 616; 407-413 Common Law) 2 0900

## SECOND COUNT

And the Jurors aforesaid, upon their oath aforesaid, do further present that the aforesaid DEFENDANT(X), late of said City on the said date(s) at the said place, at the City aforesaid, unlawfully did wear and carry concealed upon and about (his/xxxxxxxxxx) person(x), a certain dangerous and deadly weapon to wit: __Unknown Sharp Object__; contrary to the form of the Act of Assembly in such case made and provided, and against the peace, government and dignity of the State.
(Art. 27, Sect. 36) 1-5202

## THIRD COUNT

And the Jurors aforesaid, upon their oath aforesaid, do further present that the aforesaid DEFENDANT(X), late of said City, on the said date(x), at the said place, at the City aforesaid, unlawfully did wear and carry openly with the intent and purpose of injuring the aforesaid Complainant, a certain dangerous and deadly weapon to wit: __Unknown Sharp Object__; contrary to the form of the Act of Assembly, in such case made and provided, and against the peace, government and dignity of the State.
(Art. 27, Sec. 36) 1-5200

_Patricia C. Jessamy_

The State's Attorney for the City of Baltimore

# Exhibit 25

Circuit Court of Maryland
Go Back

**Case Information**

Court System: **Circuit Court for Baltimore City - Criminal System**
Case Number: **199062008** Case Status: **CLOSED**
Status Date:  **08/30/1999**
Tracking Number: **981002174784**   Complaint No: **1G13258**
District Case No:  **2B00323920**
Filing Date: **03/03/1999**

**Defendant Information**

Defendant Name: **SCOTT, KEITH MICHAEL**
Race: **BLACK**          Sex: **MALE**
DOB: ▮▮▮▮▮▮
Address: ▮▮▮▮▮▮▮
City: ▮▮▮▮  State: ▮▮ Zip Code: ▮▮▮▮

**Charge and Disposition Information**

*(Each Charge is listed separately. The disposition is listed below the Charge)*

| Charge No: | 1 | |
|---|---|---|
| CJIS/Traffic Code: **2 0900** | | Arrest/Citation No: **000000** |
| Description: | **MURDER-FIRST DEGREE** | |
| Disposition: | **LESSER INCLUDED OFFENSES** | |
| Disposition Date: **08/30/1999** | | |

| Charge No: | 2 | |
|---|---|---|
| CJIS/Traffic Code: **1 5202** | | Arrest/Citation No: **000000** |
| Description: | **DEADLY WEAPON-CONCEAL** | |
| Disposition: | **CLOSED - JEOPARDY OR OTHER CONVICTION** | |
| Disposition Date: **08/30/1999** | | |

| Charge No: | 3 | |
|---|---|---|
| CJIS/Traffic Code: **1 5200** | | Arrest/Citation No: **000000** |
| Description: | **DEADLY WEAPON-INT INJURE** | |
| Disposition: | **CLOSED - JEOPARDY OR OTHER CONVICTION** | |
| Disposition Date: **08/30/1999** | | |

| Charge No: | 4 | |
|---|---|---|
| CJIS/Traffic Code: **1 1415** | | Arrest/Citation No: **000000** |
| Description: | **ASSAULT-SEC DEGREE** | |
| Plea: | **GUILTY**  Plea Date: **08/30/1999** | |
| Disposition: | **SENTENCED** | |
| Disposition Date: **08/30/1999** | | |
| Verdict: | **GUILTY**  Verdict Date: **08/30/1999** | |
| Sentence Starts: **02/02/1999**   Sentence Date: **08/30/1999** | | |
| Sentence Time: Yrs: **00**  Mos: **06**  Days: **29**  Confinement : **NC** | | |

**Related Person Information**

Name: **SCOTT, KEVIN LEE**
Connection: **CODEFENDANT**
Address ▮▮▮▮▮▮
City: ▮▮▮▮  State: ▮▮ Zip Code: ▮▮▮▮

Name: **VOLATILE, GERARD**
Connection: **ASST STATES ATTORNEY**

Address: ███████████████████
City: ██████████ State: ██ Zip Code: ███████

Name:**BARRICK, JOHN DET SGT**
Connection:**POLICE OFFICER**
Address:**CID**

Name:**GORDON, DONALD DET**
Connection:**POLICE OFFICER**
Address:**CID**

Name:**HASTINGS, KIRK DET**
Connection:**POLICE OFFICER**
Address:**CID**

Name:**KLEINOTA, JOSEPH DET**
Connection:**POLICE OFFICER**
Address:**CID**

Name:**RIVERA, LISSETTA TECH**
Connection:**POLICE OFFICER**
Address:**LD**

Name:**SERIO, SCOTT DET**
Connection:**POLICE OFFICER**
Address:**CID**

Name:**PATTON, ROBERT DET**
Connection:**PRIMARY POLICE OFFICER**
Address:**CID**

**Event History Information**

| Event | Date | Comment |
|---|---|---|
| CONV | 01/01/1900 | CASE HAS BEEN CONVERTED FOR DCM UPGRADE ON 20010330 |
| CONV | 01/01/1900 | CASE HAS BEEN CONVERTED FOR W/Y2K UPGRADE ON 19990423 |
| CASI | 03/03/1999 | CASE ADDED THROUGH ON-LINE ON THIS DATE 990311 |
| HCAL | 04/22/1999 | P14;0930;330B;JT ; ;TSET; ;BROWN, R.W. ;849 |
| HCAL | 08/30/1999 | P03;0900;528 ;JT ;GP;JUDG; ;MITCHELL, D.B. ;842 |
| CCAS | 08/30/1999 | CASE CLOSED - ALL COUNTS DISPOSED Q226 |

*This is an electronic case record. Full case information cannot be made available either because of legal restrictions on access to case records found in Maryland rules 16-1001 through 16-1011, or because of the practical difficulties inherent in reducing a case record into an electronic format.*

# Exhibit 26

Circuit Court of Maryland
Go Back

**Case Information**

Court System: **Circuit Court for Baltimore City - Criminal System**
Case Number: **199062009**  Case Status: **CLOSED**
Status Date:   **08/30/1999**
Tracking Number: **981002174773**   Complaint No: **1G13258**
District Case No:  **1B00323919**
Filing Date: **03/03/1999**

**Defendant Information**

Defendant Name: **SCOTT, KEVIN LEE**
Race: **BLACK**        Sex: **MALE**
DOB: ████████████
Address: ████████████████████████
City: ████████  State: ██  Zip Code: ██████

ALIAS:
Address: ████████████████
City: ██████  State: ██  Zip Code: ██████

**Charge and Disposition Information**

*(Each Charge is listed separately. The disposition is listed below the Charge)*

Charge No:        **1**
CJIS/Traffic Code: **2 0900**              Arrest/Citation No: **0000000**
Description:      **MURDER-FIRST DEGREE**
Disposition:     **LESSER INCLUDED OFFENSES**
Disposition Date: **08/30/1999**

Charge No:        **2**
CJIS/Traffic Code: **1 5202**              Arrest/Citation No: **0000000**
Description:      **DEADLY WEAPON-CONCEAL**
Disposition:     **CLOSED - JEOPARDY OR OTHER CONVICTION**
Disposition Date: **08/30/1999**

Charge No:        **3**
CJIS/Traffic Code: **1 5200**              Arrest/Citation No: **0000000**
Description:      **DEADLY WEAPON-INT INJURE**
Disposition:     **CLOSED - JEOPARDY OR OTHER CONVICTION**
Disposition Date: **08/30/1999**

Charge No:        **4**
CJIS/Traffic Code: **1 1415**              Arrest/Citation No: **0000000**
Description:      **ASSAULT-SEC DEGREE**
Plea:            **GUILTY**  Plea Date: **08/30/1999**
Disposition:     **SENTENCED**
Disposition Date: **08/30/1999**
Verdict:         **GUILTY**  Verdict Date: **08/30/1999**
Sentence Starts: **02/02/1999**  Sentence Date: **08/30/1999**
Sentence Time: Yrs: **00**  Mos: **06**  Days: **29**  Confinement: **NC**

**Related Person Information**

Name: **SCOTT, KEITH MICHAEL**
Connection: **CODEFENDANT**
Address: ████████████████

City: ▓▓▓▓ State: ▓▓ Zip Code: ▓▓▓▓

---

Name: **VOLATILE, GERARD**
Connection: **ASST STATES ATTORNEY**
Address: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
City: ▓▓▓▓▓▓ State: ▓▓ Zip Code: ▓▓▓▓▓

---

Name: **BARRICK, JOHN DET SGT**
Connection: **POLICE OFFICER**
Address: **CID**

---

Name: **GORDON, DONALD DET**
Connection: **POLICE OFFICER**
Address: **CID**

---

Name: **HASTING, KIRK DET**
Connection: **POLICE OFFICER**
Address: **CID**

---

Name: **KLEINOTA, JOSEPH DET**
Connection: **POLICE OFFICER**
Address: **CID**

---

Name: **RIVERA, LISSETTE**
Connection: **POLICE OFFICER**
Address: **LD**

---

Name: **SERIO, SCOTT DET**
Connection: **POLICE OFFICER**
Address: **CID**

---

Name: **PATTON, ROBERT DET**
Connection: **PRIMARY POLICE OFFICER**
Address: **CID**

---

**Event History Information**

| Event | Date | Comment |
|-------|------|---------|
| CONV | 01/01/1900 | CASE HAS BEEN CONVERTED FOR DCM UPGRADE ON 20010330 |
| CONV | 01/01/1900 | CASE HAS BEEN CONVERTED FOR W/Y2K UPGRADE ON 19990423 |
| CASI | 03/03/1999 | CASE ADDED THROUGH ON-LINE ON THIS DATE 990311 |
| HCAL | 04/22/1999 | P14;0930;330B;JT ; ;TSET; ;BROWN, R.W. ;849 |
| HCAL | 08/30/1999 | P03;0900;528 ;JT ;GP;JUDG; ;MITCHELL, D.B. ;842 |
| CCAS | 08/30/1999 | CASE CLOSED – ALL COUNTS DISPOSED Q226 |

*This is an electronic case record. Full case information cannot be made available either because of legal restrictions on access to case records found in Maryland rules 16-1001 through 16-1011, or because of the practical difficulties inherent in reducing a case record into an electronic format.*

# Exhibit 27

Circuit Court of Maryland
Go Back

**Case Information**

Court-System: **Circuit Court for Baltimore City - Criminal System**
Case Number: **199110054**   Case Status: **CLOSED**
Status Date:   **12/14/1999**
Tracking Number: **991001198865**   Complaint No: **1G13258**
District Case No: **0B00359961**
Filing Date: **04/20/1999**

**Defendant Information**

Defendant Name: **MILLER, KEVIN ANTHONY**
Race:**BLACK**       Sex: **MALE**
DOB: ▮▮▮▮▮
Address: ▮▮▮▮▮▮▮▮▮
City: ▮▮▮▮   State: ▮▮   Zip Code: ▮▮▮▮▮

**Charge and Disposition Information**

*(Each Charge is listed separately. The disposition is listed below the Charge)*

Charge No:          **1**
CJIS/Traffic Code: **2 0900**
Description:      **MURDER-FIRST DEGREE**
Disposition:      **LESSER INCLUDED OFFENSES**
Disposition Date: **10/18/1999**

Charge No:          **2**
CJIS/Traffic Code: **1 5202**
Description:      **DEADLY WEAPON-CONCEAL**
Disposition:      **CLOSED - JEOPARDY OR OTHER CONVICTION**
Disposition Date: **12/10/1999**

Charge No:          **3**
CJIS/Traffic Code: **1 5200**
Description:      **DEADLY WEAPON-INT INJURE**
Disposition:      **CLOSED - JEOPARDY OR OTHER CONVICTION**
Disposition Date: **12/10/1999**

Charge No:          **4**
CJIS/Traffic Code: **1 0999**
Description:      **MURDER-2ND DEGREE**
Plea:            **GUILTY**  Plea Date: **10/18/1999**
Disposition:      **PROBATION AFTER CONVICTION**
Disposition Date: **12/10/1999**
Verdict:          **GUILTY**  Verdict Date: **10/18/1999**
Sentence Starts: **04/07/1999**   Sentence Date:**12/10/1999**
Sentence Time: Yrs: **20**  Mos: **00**  Days: **00**  Confinement : **NC**
Suspended Time: Yrs: **15**  Mos: **00**  Days: **00**
Probation Time: Yrs: **03**  Mos: **00**  Days: **00**  Type: **Supervised**

**Related Person Information**

Name:**CROWLEY, KIRK D**
Connection:**DEFENSE ATTORNEY**
Address: ▮▮▮▮▮▮▮
City: ▮▮▮▮   State: ▮▮   Zip Code: ▮▮▮▮▮

Name: **STEWART, NELSON R**
Connection: **ASST PUBLIC DEFENDER**
Address: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
City ▮▮▮▮▮▮▮  State: ▮▮  Zip Code: ▮▮▮▮▮  .

Name: **COHEN, MARK**
Connection: **ASST STATES ATTORNEY**
Address ▮▮▮▮▮▮▮▮▮▮▮▮
City: ▮▮▮▮▮▮▮  State: ▮▮▮  Zip Code: ▮▮▮▮▮

Name: **BARRICK, JOHN SGT**
Connection: **POLICE OFFICER**
Address: **TACT**

Name: **GORDON, DONALD DET**
Connection: **POLICE OFFICER**
Address: **TACT**

Name: **HASTINGS, KIRK DET**
Connection: **POLICE OFFICER**
Address: **TACT**

Name: **KLEINOTA, JOSEPH**
Connection: **POLICE OFFICER**
Address: **TACT**

Name: **PATTON, ROBERT DET**
Connection: **POLICE OFFICER**
Address: **TACT**

Name: **RIVERA, LISSETTE TECH**
Connection: **POLICE OFFICER**
Address: **TACT**

Name: **SERIO, SCOTT DET**
Connection: **POLICE OFFICER**
Address: **TACT**

Event History Information

| Event | Date | Comment |
|-------|------|---------|
| CONV | 01/01/1900 | CASE HAS BEEN CONVERTED FOR DCM UPGRADE ON 20010330 |
| CASI | 04/20/1999 | CASE ADDED THROUGH ON-LINE ON THIS DATE 19990426 |
| MOTF | 05/13/1999 | MOTION FOR SPEEDY TRIAL |
| MOTF | 05/13/1999 | MOTION TO PRODUCE DOCUMENTS |
| MOTF | 05/13/1999 | REQUEST FOR DISCOVERY |
| MOTF | 05/13/1999 | MOTION TO SUPPRESS PURSUANT TO MD 4-252 AND 4-253 |
| MOTF | 05/13/1999 | MOTION FOR GRAND JURY TESTIMONY |
| MOTF | 05/13/1999 | DEMAND FOR CHEMIST |
| FILE | 05/13/1999 | FILED APD - STEWART, NELSON R , ESQ 809167 |
| MOTF | 05/25/1999 | MOTION FOR SPEEDY TRIAL |
| MOTF | 05/25/1999 | MOTION TO PRODUCE DOCUMENTS |
| MOTF | 05/25/1999 | REQUEST FOR DISCOVERY |
| MOTF | 05/25/1999 | MOTION TO SUPPRESS PURSUANT TO MD 4-252 AND 4-253 |
| MOTF | 05/25/1999 | MOTION FOR GRAND JURY TESTIMONY |
| MOTF | 05/25/1999 | DEMAND FOR CHEMIST |
| HCAL | 06/04/1999 | P30;0930;451 ;ARRG; ;TSET; ;MURDOCK, M. BRO;8B3 |
| HCAL | 08/30/1999 | P03;0900;528 ;JT ; ;POST;PX ;HELLER, ELLEN ;848 |
| HWNO | 08/30/1999 | HICKS (MARYLAND RULE 4-271) NOT WAIVED |
| HCAL | 10/18/1999 | P27;0900;406 ;JT ;GP;SUBC; ;QUARLES, WILLIA;8A9 |
| FILE | 10/18/1999 | FILED ADF - CRAWLEY, KIRK D , ESQ 174390 |
| HCAL | 12/10/1999 | P27;0930;406 ;DISP;DS;JUDG; ;QUARLES, WILLIA;8A9 |
| CCAS | 12/14/1999 | CASE CLOSED - ALL COUNTS DISPOSED Q226 |

# Exhibit 28

Case 8:98-cr-00520-PJM Document 979-1 Filed 12/04/11 Page 59 of 69

# MARYLAND SENTENCING GUIDELINES WORKSHEET

| OFFENDER | | | | BIRTHDATE | JURISDICTION |
|---|---|---|---|---|---|
| Miller | Kevin | | | | |

| PSI | DATE OF OFFENSE | DATE OF SENTENCING | | DISPOSITION TYPE | AOC USE ONLY, DO NOT WRITE IN SPACE BELOW |
|---|---|---|---|---|---|

1 Yes 2 No

1. Plea agreement - state nature of _____
2. Plea, no agreement
3. Court trial
4. Jury trial

AT THIS SENTENCING NUMBER OF:
CONVICTED OFFENSES: 0 1
CRIMINAL EVENTS: 0 1
WORKSHEET # 1 OF
CRIMINAL EVENT # 1

| CONVICTED OFFENSE TITLE | AOC CODE | MD. CODE, ART; & SECTION | STAT. MAX | DOCKET NUMBER |
|---|---|---|---|---|
| 1st MURDER - SECOND DEGREE | | | | |
| 2nd | | | | |
| 3rd | | | | |

## OFFENSE SCORE(S) (Offense Against a Person Only)

| 1st Off | 2nd Off | 3rd Off | A. Seriousness Category |
|---|---|---|---|
| 01 | 01 | 01 | = V - VII |
| 03 | 03 | 03 | = IV |
| 05 | 05 | 05 | = III |
| 08 | 08 | 08 | = II |
| 10 | 10 | 10 | = I |

B. Victim Injury
| 0 | 0 | 0 | = No Injury |
| 1 | 1 | 1 | = Injury, Non-Permanent |
| 2 | 2 | 2 | = Permanent Injury or Death |

C. Weapon Usage
| 0 | 0 | 0 | = No Weapon |
| 1 | 1 | 1 | = Weapon Other Than Firearm |
| 2 | 2 | 2 | = Firearm or Explosive |

D. Special Vulnerability of Victim
| 0 | 0 | 0 | = No |
| 1 | 1 | 1 | = Yes |

OFFENSE SCORE (S)

## OFFENDER SCORE

A. Relationship to CJS When Instant Count Occurred
0 = None or Pending Cases
1 = Court or Other Criminal Justice Supervision

B. Juvenile Delinquency
0 = Not More Than One Finding of Delinquency or over age 25
1 = Two or More Findings, No or One Commitment
2 = Two or More Commitments

C. Prior Adult Criminal Record
0 = None   2 = Minor
3 = Moderate  5 = Major

D. Prior Adult Parole/Probation Violations
0 = No   1 = Yes

OFFENDER SCORE

## GUIDELINES RANGE

1st Offense ____ TO ____
2nd Offense ____ TO ____
3rd Offense ____ TO ____

OVERALL GUIDELINES RANGE (For Multiple Counts Only) ____ TO ____

## ACTUAL SENTENCE

1st Convicted Offense | Subsequent offender 1 Yes 2 No

2nd Convicted Offense | Subsequent offender 1 Yes 2 No

3rd Convicted Offense | Subsequent offender 1 Yes 2 No

## REASON IF ACTUAL SENTENCE DEPARTS FROM GUIDELINES RANGE

## INSTITUTIONAL/PAROLE RECOMMENDATION/ADDITIONAL INFO.

SENTENCING JUDGE

SIGNATURE

WORKSHEET COMPLETED BY   TITLE

COPIES: White: Judge; Blue: AOC; Green: Attach to Commitment or Probation Order; Yellow: File; Pink: Prosecution; Gold: Defense   (Rev. 7/87)

# Exhibit 29

☐ CIRCUIT COURT ☐ DISTRICT   COURT OF MARYLAND FOR _____

Located at

| Court Address | Zip Code | Telephone |
|---|---|---|
| ████████████████████ | ▓▓▓▓ | ▓▓▓▓ |

State of Maryland

vs.

| Defendant | D.O.B. |
|---|---|
| _Kevin Miller_ | ███ |

Case No(s). _19911054_

Tracking No. _99103197865_

Date Sentence Imposed _12/10/99_

I.D. No. _924-160, 510# 09/193168_

## COMMITMENT RECORD

TO: ☑ Commissioner of Correction ☐ Warden/Sheriff of _____ Jail/Detention Center

YOU ARE DIRECTED to receive the above named Defendant who has been sentenced and is hereby committed to your custody by JUDGE _William D. Quarles_  The Defendant has been found guilty as to:

| Case/Count/Offense No. _19911054 - 001_ | Charge _2nd Murder_ | Art. _27_ | Sec. _4.1_ |
|---|---|---|---|

Sentence _30 yrs_          Concurrent with      Consecutive to
Case/Count/Offense No. _____

☐ PAROLE ELIGIBILITY RESTRICTIONS   Art. ___  Sec. ___   (PROVIDE DETAILS IN ADDITIONAL SENTENCING INFORMATION)

| Case/Count/Offense No. _____ | Charge _____ | Art. ___ | Sec. ___ |
|---|---|---|---|

Sentence _____          Concurrent with      Consecutive to
Case/Count/Offense No. _____

☐ PAROLE ELIGIBILITY RESTRICTIONS   Art. ___  Sec. ___   (PROVIDE DETAILS IN ADDITIONAL SENTENCING INFORMATION)

**SPLIT SENTENCE**

All but _5 yrs_ ___ is/are suspended and the Defendant is placed on probation for a period of _2 yrs_ commencing upon:

CHECK ONE:
1. ✓ Release of Defendant from physical incarceration.
2. ___ Release of Defendant from parole, or mandatory supervision pursuant to Art. 41, Sec 4-612.

The total time to be served is _5 yrs_ , to run:

**SELECT ONLY ONE**

A. ☑ concurrent with any other outstanding or unserved sentence and begin on _4-7-99_

B. ☐ consecutive to the last sentence to expire of all outstanding and unserved Maryland sentences.

C. ☐ consecutive to the sentence imposed in Case No. _____

The Defendant has been awarded _____ days credit for time served prior to and not including date of sentence (Art. 27, Sec. 638C).

ADDITIONAL SENTENCING INFORMATION:   PROVIDE PAROLE ELIGIBILITY RESTRICTIONS OR PAROLE RECOMMENDATIONS, IF ANY:

_____

$ _____ court cost(s) have been waived due to indigency.

☐ Commitment is for execution of previously suspended sentence after Defendant was found in violation of probation.
☐ Sentencing modification. This Commitment supersedes commitment issued on: _____

ATTACHMENTS HERETO INCLUDE: ☐ Additional Sentence(s)   ☑ Order For Probation   ☐ Conditions of Parole
☐ Order For Reimbursement of Public Defender   ☐ Other: _____
☐ Victim Notification Request

TRULY taken from the record of this Court.
WITNESS my Hand and the Seal of said Court this date:

☐ Appeal Bond set at $ _____

_____          _____
                              Clerk/Judge

CC-DC/CR 28 (Rev. 7/97)

# Exhibit 30



# Department of Public Safety and Correctional Services

## Data Management Unit
6776 REISTERSTOWN ROAD • SUITE 314 • BALTIMORE, MARYLAND 21215-2342
(410) 585-3350 • FAX (410) 764-4220 • TOLL FREE (877) 379-8636 • V/TTY (800) 735-2258 •www.dpscs.maryland.gov

3 STATE OF MARYLAND

MARTIN O'MALLEY
GOVERNOR

ANTHONY G. BROWN
LT. GOVERNOR

GREGG L. HERSHBERGE
SECRETARY

PATRICIA DONOVAN
DEPUTY SECRETARY
ADMINISTRATION

CARROLL PARRISH
DEPUTY SECRETARY
OPERATIONS

RHEA L. HARRIS
ASSISTANT SECRETARY
CHIEF OF STAFF

DAVID N. BEZANSON
ASSISTANT SECRETARY
CAPITAL PROGRAMS

WAYNE WEBB
EXECUTIVE DIRECTOR
NORTH REGION

WENDELL M. FRANCE
EXECUTIVE DIRECTOR
CENTRAL REGION

PATRICIA A. VALE
EXECUTIVE DIRECTOR
SOUTH REGION

DR. SHARON BAUCOM
EXECUTIVE DIRECTOR
CLINICAL SERVICES

PATRICIA A. MOORE
DIRECTOR
ADMINISTRATIVE SERVICE

ERNEST ELEY, JR.
DIRECTOR
COMMUNITY SUPERVISIO
SUPPORT

RANDALL L. WATSON
DIRECTOR
PROGRAMS AND SERVICE

TINA M. STUMP
DIRECTOR
SECURITY OPERATIONS

STEPHEN M. SHILOH, CCI
CHIEF EXECUTIVE OFFICE
MARYLAND CORRECTION
ENTERPRISES

## MEMORANDUM

TO:      Whom it May Concern

FROM:    Lt. Necole Haggie, Administrator, Data Management Unit

DATE:    June 20, 2014

RE:      Inmate Information

**REF:**     KEVIN ANTHONY MILLER
**DOC #:**   289908

Listed below is the requested information under the authority of the Annotated Code of Maryland, Family Law Article, Section 12-105 for the above named individual.

**Social Security No:** –██████████
**Date of Birth:** –'████████
**Admission Date:** – 12/17/1999
**Length of Sentence:** – 005y 0m 0d
**Sentence Start Date:** – 04/07/1999
**Release Date:** – 07/29/2002
**Institution Released from:** – JPRU

Prepared By: Sannan Andrews, Data Management Unit,
If additional information is needed, please contact (410) 585-3105.

# Exhibit 31



**U.S. Departmen** ° **Justice**

*United States Attorney*
*District of Maryland*
*Southern Division*

*Lynne A. Battaglia*
*United States Attorney*

*Deborah A. Johnston*
*Assistant United States Attorney*

*400 United States Courthouse*
*6500 Cherrywood Lane*
*Greenbelt, MD 20770-1249*

*301-344-4433*

*301-344-4032*
*FAX 301-344-4518*

January 21, 1999

Mr. Timothy Sullivan, Esquire



Harry Trainor

Re:   United States v. Dustin Higgs
Crim. No. PJM-98-0520

Dear Mr. Trainor and Mr. Sullivan:

We write to set forth the conditions on which the Government is willing to make discovery in this case. Under Rule 16 of the Federal Rules of Criminal Procedure, discovery is to be given "upon request", and we understand that you do request discovery. Therefore, we also request discovery pursuant to Rule 16(b).

The Government will provide discovery pursuant to and as defined in Rule 16 on the following basis:

Jencks material as defined in 18 U.S.C. § 3500, along with related Giglio material such as witness' plea agreements, criminal convictions and prior inconsistent statements, will be provided no later than one week prior to trial. However, the government reserves the right to delay provision of any such materials if the government believes that disclosure of the information will pose a security risk to any witness. Brady material which is not otherwise included in the Rule 16, Jencks or Giglio material referred to above will be provided if and when discovered. Jencks material is defined for purposes of this agreement in accordance with the specific provisions of 18 U.S.C. § 3500. Jencks material is given on agreement that reciprocal Rule 26.2 material will be provided by you at the same time we provide Jencks material.

The government agrees that at the same time that it provides Rule 16 material, it will provide notice of the existence of alleged other crimes, wrongs or acts committed by your client pursuant to Rule 404(b) of the Federal Rules of Evidence, along with copies of all physical and documentary evidence believed by the government to fall within the ambit of Rule 404(b) which the

government intends to introduce at trial in its case-in-chief. The government acknowledges its continuing duty to disclose Rule 404(b) evidence as it is recognized as such after the time period in which the government has provided Rule 16 material.

The government reserves the right to provide later notice of Rule 404(b) material if the government believes that disclosure of such information will pose a security risk to any witness. As to any such witness, the government will disclose all **Jencks** material and all Rule 404(b) evidence at the same time.

All discovery is provided on the condition that counsel will not give copies of this material to the client or to anyone outside counsel's office, absent prior approval of this office. Counsel may, of course, review this material with the client at any time or place.

Should counsel file any routine motion with the Court which seeks discovery pursuant to Rule 16 or <u>Brady</u>, then this discovery agreement will be void, and the Government is not bound by any of the provisions herein. Specifically, <u>Jencks</u> and <u>Giglio</u> material may not be provided until the first day of trial if the defendant should file such a motion.

The Government may be providing, as a courtesy, material which is not discoverable under Rule 16, <u>Jencks</u>, <u>Giglio</u> or <u>Brady</u>. The fact that certain non-discoverable materials are provided in no way obligates the Government to provide all non-discoverable materials, and the fact that certain non-discoverable materials are provided should never be taken as a representation as to the existence or non-existence of any other non-discoverable materials.

Please note that it is the policy of this Office that the government will not stipulate to a three level reduction in offense level pursuant to §3E1.1 of the United States Sentencing Guidelines unless the defendant has entered into a signed written plea agreement with the government on or before the date set for the filing of pretrial motions.

Please indicate your consent to this discovery agreement by signing and returning to us a copy of this letter. We urge you to call or write me with any questions that arise, as we may be able to resolve any questions without the filing of motions and responses with the Court.

Very truly yours,

LYNNE A. BATTAGLIA
UNITED STATES ATTORNEY

Deborah A. Johnston
Sandra Wilkinson
Assistant United States Attorneys

Accepted: _____   DATE: ___2/4/99___

Harry Trainor, Esquire

Accepted: _____   DATE: ___2/4/99___

Timothy Sullivan, Esquire

cc: Court file

# Exhibit 32

## AFFIDAVIT/DECLARATION OF HARRY TRAINOR
## PURSUANT TO 28 U.S.C. § 1746

I, Harry Trainor, do hereby declare and verify as follows:

1.      My name is Harry Trainor.  Timothy Sullivan and I represented Dustin Higgs at his federal capital trial.

2.      Victor Gloria was the government's most important witness at trial.  He made numerous assertions at trial that were central to the government's theory of the case.  Challenging his credibility and veracity were of paramount importance to our defense strategy.

3.      Prior to the trial, we received some information that Mr. Gloria may have been present at the scene of an unrelated homicide in Baltimore.  It was our understanding that this homicide occurred after the homicides for which Mr. Higgs was on trial, but prior to trial itself.  We had very little detail about the incident, and I do not recall receiving any information from the government about this issue.

4.      Recently, current counsel for Mr. Higgs have shared information with me that suggests that Mr. Gloria was not only present, but was in fact a suspect in the Baltimore homicide.  The information recently shared with me further suggests that the federal authorities responsible for Mr. Higgs's capital prosecution intervened with Baltimore authorities in order to prevent Mr. Gloria from being charged with the murder.

5.      I consider receiving a free pass on a murder charge to be an extraordinary benefit for a witness.  Had we been made aware of this benefit received by Mr. Gloria, we would have asked for all appropriate discovery relevant to the benefit, we would have fully investigated the issue, and we

1

certainly would have made significant use of the benefit to challenge Mr. Gloria's credibility during Mr. Higgs's trial.

6.    I hereby certify that the facts set forth above are true and correct to the best of my personal knowledge, information, and belief, subject to 28 U.S.C. §1746.

Harry Traino

Dated: Dec. 3, 2014

2