**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FOURTH CIRCUIT**

|  |  |  |
|---|---|---|
|  | * |  |
|  | * |  |
| IN RE: DUSTIN JOHN HIGGS | * | NO. 16-8 |
|  | * |  |
|  | * |  |
|  | * |  |
|  | * |  |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

### GOVERNMENT'S OPPOSITION TO DEFENDANT'S APPLICATION TO FILE SUCCESSIVE § 2255 MOTION

The United States of America, by its undersigned counsel, respectfully opposes defendant Dustin John Higgs's pending application for leave to file a successive motion under 28 U.S.C. § 2255. The government submits the following in support of its opposition.

### INTRODUCTION

Movant Dustin John Higgs ("Higgs") was convicted of three counts of first-degree premeditated murder, in violation of 18 U.S.C. § 1111(a), three counts of first-degree murder committed in the perpetration or attempted perpetration of a kidnapping, *see id.*, and three counts of kidnapping resulting in death, in violation of 18 U.S.C. § 1201(a), arising out of the brutal January 27, 1996 killings of three

1

young women in the Patuxent National Wildlife Refuge in Maryland.[1] Higgs was also charged and convicted of three counts of using a firearm "during and in relation to [a] crime of violence." 18 U.S.C. § 924(c). Ultimately, Higgs received nine death sentences under the Federal Death Penalty Act, *see* 18 U.S.C. § 3591 *et seq.*, one for each murder and kidnapping count, and a consecutive 45-year sentence for the firearms convictions. This Court affirmed each of Higgs's convictions and sentences, and the Supreme Court denied certiorari. *Higgs*, 353 F.3d 281 (4th Cir. 2003), *cert. denied*, 543 U.S. 999 (2004). Higgs filed a motion for new trial, which the district court rejected; this Court affirmed. *See United States v. Higgs*, 95 Fed. Appx. 37 (4th Cir. 2004), *cert. denied*, 503 U.S. 1004 (2004). Higgs then filed a motion for relief under 28 U.S.C § 2255, which the district court denied. This Court again affirmed, in a lengthy published opinion authored by Chief Judge Traxler. *United States v. Higgs*, 663 F.3d 726 (4th Cir. 2011), *cert. denied*, 133 S. Ct. 787 (2012).

Pending now before this Court is Higgs's 489-page "Application for Leave to File a Successive Motion Under 28 U.S.C. § 2255," which he filed on May 23, 2016. ECF No. 2-1. This Court has requested a government response no later than June 3, 2016. ECF No. 7.

---

[1]  The factual recitation provided herein is taken from this Court's decision affirming Higgs's convictions and nine death sentences in *United States v. Higgs*, 353 F.3d 281 (4th Cir. 2003). *See also* **Exh. 1** (Second Superseding Indictment).

In his pending application, Higgs does not challenge his multiple convictions for first-degree premeditated murder and kidnapping. Neither does he challenge his numerous death sentences, each of which has been upheld by this Court and by the Supreme Court after numerous challenges stretching over a dozen years. Instead, Higgs challenges only his firearms convictions (and, by extension, the associated sentences) under 18 U.S.C. § 924(c). Those convictions, in turn, are predicated upon the defendant's convictions (1) for "using a firearm in the commission of a crime of violence, that is either the murder or kidnapping of Tamika Black," **Exh. 2** (verdict sheet) at 1; (2) for "using a firearm in the commission of a crime of violence, that is either the murder or kidnapping of Mishann Chinn," *id*. at 2; and (3) for "using a firearm in the commission of a crime of violence, that is either the murder or kidnapping of Tanji Jackson." *Id*. at 3.

Higgs advances in his pending application the procedurally defaulted claim that his underlying convictions for first-degree murder and kidnapping "fail to categorically qualify as 'crime[s] of violence'" for purposes of § 924(c). ECF No. 2-1 at 3. On his view, the "residual clause" of § 924(c)'s definition of "crime of violence" is void for vagueness in light of the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015), which construed the differently worded and differently structured "residual clause" of the Armed Career Criminal Act ("ACCA"), found at 18 U.S.C. § 924(e). Whether the § 924(c) residual clause

is unconstitutionally vague is a deeply contested issue that has split the circuits— though one would never know that in reading Higgs's application.[2] Higgs further argues that "both murder and kidnapping fail to categorically qualify as a 'crime of violence' under [Section 924(c)'s] remaining force clause." ECF No. 2-1 at 3. Therefore, he argues "the 'crime of violence' element cannot be satisfied here under § 924(c), and the convictions are unconstitutional." *Id.*

For reasons described in further detail below, this Court should deny Higgs's application because he has failed to make even a prima facie showing that his proposed successive § 2255 motion is based on a (1) previously unavailable (2) new rule (3) of constitutional law that (4) has been made retroactive by the Supreme Court to cases on collateral review. 28 U.S.C. § 2255(h)(2); *Tyler v. Cain*, 553 U.S. 656, 662 (2001); *United States v. Williams*, 330 F.3d 277, 281 (4th Cir. 2003) (citation omitted) ("prima facie showing" means "simply a sufficient showing of possible merit to warrant a fuller explanation by the district court"). Stated simply, Higgs's multiple convictions for first-degree premeditated murder plainly qualify as predicate "crime[s] of violence" for purposes of § 924(c). No

---

[2]  *Compare United States v. Taylor*, 814 F.3d 340, 375-79 (6th Cir. 2016) (Section 924(c) residual clause is *not* unconstitutionally vague) to *United States v. Vivas-Ceja*, 808 F.3d 719, 723 (7th Cir. 2015) (18 U.S.C. § 16(b), which is identically-worded, is unconstitutionally vague); *Dimaya v. Lynch*, 803 F.3d 1110, 1120 (9th Cir. 2015) (same). In addition, a recent Fifth Circuit panel decision holding that § 16(b) is unconstitutionally vague was vacated on the Court's own motion, and reset for rehearing en banc. *See United States v. Gonzalez-Longoria*, 815 F.3d 189 (5th Cir. 2016) (en banc argument on May 24, 2016).

court has held otherwise; no principle of law (found in *Johnson* or any other case) gestures differently; and simple common sense confirms that ***first-degree premeditated murder***, let alone kidnapping, is an offense that, at the very least, has "as an element the use, attempted use, or threatened use of physical force against the person or property of another[.]" 18 U.S.C. § 924(c)(3)(A).[3]

## FACTS

On the evening of Friday, January 26, 1996, Dustin John Higgs, Willie Mark Haynes, and Victor Gloria drove from Higgs's apartment at 13801 Briarwood Drive in Laurel, Maryland, to Washington, D.C. Arriving in the city in Higgs's blue Mazda MPV van, the men picked up Tanji Jackson, Tamika Black, and Mishann Chinn. Jackson knew Higgs, and they had arranged for Haynes to date Black and for Gloria to date Chinn. After stopping at a liquor store, the couples returned to Higgs's apartment to drink alcohol and listen to music. The men also

---

[3]    In the alternative, for the reasons described in Section IV below, this Court should hold consideration of Higgs's application in abeyance, pending resolution of other cases currently before this Court. Because those cases could resolve various potentially case-dispositive questions at issue in this case, this Court should economize its (and the district court's) resources and withhold ruling on Higgs's application until the need to do so has fully ripened. The government is unaware of any legal impediment to the Court's authority to hold the defendant's application in abeyance. *See In re Vial*, 115 F.3d 1192, 1194 n.3 (4th Cir. 1997) (en banc) (court of appeals may extend consideration of defendant's application to file second or successive § 2255 motion if "the importance of the issue presented justified the delay," despite language in 28 U.S.C. § 2244(b)(3)(D) requiring decision within 30 days of filing or of receipt of response).

smoked marijuana.[4]

Early on January 27, Higgs and Jackson began to argue, prompting Jackson to grab a knife from the kitchen. Hearing the commotion, Haynes, who had been in a bedroom with Black, broke up the fight, convincing Jackson to surrender the knife. Jackson, however, remained angry, and the three women left the apartment. As Jackson exited, "[s]he stopped at the door and said something like I am going to get you all f---ed up or robbed" or made "some kind of threat." The remark led Higgs to comment that Jackson "do know a lot of n-----s." Higgs saw Jackson stop and copy the license plate number of his van. Angered, Higgs commented aloud about Jackson's actions, which Gloria interpreted as concern that Jackson intended some retaliation.

Higgs said, "f---- that," retrieved his coat, and urged the men to come with him. Before leaving the apartment, Higgs took a silver .38 caliber firearm from the end table drawer and put it in his pocket. With Higgs driving the MPV van, Haynes in the front passenger seat, and Gloria behind Higgs, the men pursued the three women. Seeing the women walking on the side of the road, Higgs instructed

---

[4] Following a 1998 arrest on federal drug charges, Gloria agreed to cooperate in the government's murder case against Higgs and Haynes. Gloria's testimony was partially corroborated by Chinn's mother and by a friend of the Jackson family, both of whom saw the victims enter a blue Mazda MPV van. Gloria pleaded guilty to being an accessory after the fact to the murders and received 84 months' incarceration and three years of supervised release.

Haynes to get them in the vehicle. Haynes complied, and the three women got into the back seat of the vehicle, which Higgs drove toward Washington, D.C.

According to Gloria, while en route to Washington, D.C., Higgs and Haynes leaned towards each other and quietly conversed. Higgs drove past the Baltimore-Washington Parkway into the Patuxent National Wildlife Refuge, a federal property within the jurisdiction of the United States Park Police. When he pulled over at a secluded location, one of the girls asked if they were trying to "make [them] walk from [t]here?" Higgs responded, "something like that." When the women exited the van, Higgs handed his gun to Haynes, who put it behind his back and left the van. Moments later, Gloria heard a gunshot and wiped the mist off the back window in time to see Haynes shoot one of the women in the chest. Gloria turned to ask Higgs what he was doing, but saw Higgs holding the steering wheel and watching the shootings in the rearview mirror. Gloria put his head down and listened to more shots and the sound of a woman screaming.

When the shooting ended, Haynes reentered the van and closed the door. He or Higgs then commented that they had to "get rid of the gun." Higgs drove to the Anacostia River, where he or Haynes threw the gun into the water. Higgs then drove back to his apartment, which the three men proceeded to sanitize of evidence. They wiped the patio doors and "everything else, the bathroom, the doorknobs, the stereo," and threw away any items the women might have touched,

such as CDs, videotapes, and liquor bottles.  The men left the apartment and dropped the trash by a dumpster.  Higgs and Haynes left Gloria at a fast food restaurant with an admonition to "keep [his] mouth shut."

Around 4:30 a.m., a motorist found the murdered women's bodies strewn about a roadway and contacted the Park Police.  Jackson's day planner was found at the scene.  It contained Higgs's nickname and telephone number, as well as a note that read "13801 'MAZDA' 769GRY" — the street number of Higgs's apartment and the tag number for his van.  The police also recovered a .38 caliber wadcutter bullet at the scene.  According to the medical examiner, Jackson and Black each had been shot once in the chest and once in the back.  Chinn had been shot once in the back of the head.

**ARGUMENT**

*1.*    **Courts may not extend *Johnson* to other legal contexts outside the ACCA in a successive habeas petition.**

*Johnson* invalidated "the 'residual clause' *of the ACCA*," *Pakala v. United States*, 804 F.3d 139, 139 (1st Cir. 2015) (per curiam) (emphasis added), based on "[t]wo features" that "conspire[d]" to make it vague:  (1) the difficulty of determining how much risk is required, and (2) the application of a risk-based standard to a hypothetical "ordinary case."  *Johnson*, 135 S. Ct. at 2557, 2558.  The Supreme Court emphasized, however, that its ruling should not be understood to raise doubts about (much less invalidate) other laws using similar risk-based

language. *Id.* at 2561 ("The Government and the dissent next point out that dozens of federal and state criminal laws use terms like 'substantial risk,' 'grave risk,' and 'unreasonable risk,' suggesting that to hold the residual clause unconstitutional is to place these provisions in constitutional doubt. . . . Not at all."). The Court's recent decision in *Welch v. United States* reaffirmed this point, emphasizing that *Johnson* "cast no doubt on the many laws that 'require gauging the riskiness of conduct in which an individual defendant engages in a particular occasion.'" 136 S. Ct. at 1261. Because *Johnson* did not address § 924(c)(3)(B)'s residual clause, it did not invalidate that clause of its own force. *See Taylor*, 814 F.3d at 378 (*Johnson* "stressed that its reasoning did not control other statutes that refer to predicate crimes").

To be sure, *Johnson*'s reasoning provides an additional basis for challenging other differently worded residual clauses in different statutes, and some courts have extended *Johnson* in this manner. *See United States v. Vivas-Ceja*, 808 F.3d 719, 723 (7th Cir. 2015) ("Applying *Johnson*'s reasoning here, we conclude that Section 16(b) is unconstitutionally vague."); *Dimaya v. Lynch*, 803 F.3d 1110, 1120 (9th Cir. 2015) (same). Although the merits of that issue are not before the Court at this time, it is enough to note that these decisions cannot bear the weight defendant assigns to them because they were decided on direct appeal (or on a petition for review of an agency determination), a setting where appellate courts

9

appropriately decide whether to modify or refine precedent. *See generally United States v. George*, 676 F.3d 249, 258 (1st Cir. 2012) ("[D]irect review is more defendant-friendly than post-judgment review."). The instant case is a successive collateral attack on a final judgment. Accordingly, the defendant must shoulder a far greater burden here out of respect for the heightened finality interests at stake. *Id.* ("[A]n initial habeas petition is easier for a criminal defendant to litigate than a successive one."). To meet that burden, it is not enough for the defendant to argue what the law *should* be; rather, he must present a claim that is based on what the law *is* and has been recognized to be. Where a claim depends on the *extension* of precedent, it follows that authorization *cannot* be granted because the Court would need to announce a new rule of law for the first time in the defendant's own case, which it cannot do. *Cf. Tyler*, 533 U.S. at 667 (holding that the Supreme Court cannot "today" make a new rule retroactive in the defendant's own case for purposes of a successive application).

The statutes regulating successive § 2255 motions support this view. Acting in their gatekeeping capacity, the courts of appeals are not asked to conduct a plenary merits review in these cases; instead, they need only decide whether the defendant has made a "prima facie showing" that his claim satisfies one of two narrow sets of statutory criteria. 28 U.S.C. § 2244(b)(3)(C). And in making that determination, Congress has imposed strict procedural limitations: the proceedings

are truncated, often non-adversarial, and subject to expedited disposition. 28 U.S.C. § 2244(b)(3)(D) (applications must generally be decided within 30 days). The 30-day time frame for decision in particular is evidence that Congress generally intended the courts of appeals, acting as gatekeepers, to make a quick up-or-down determination after comparing the defendant's allegations to the statutory conditions for authorization without the need to undertake difficult legal analysis. *See Ashley v. United States*, 266 F.3d 671, 673 (7th Cir. 2001) ("[s]hortness of time" for resolving successive applications "implies a mechanical process; all the court need do is look up an answer in the United States Reports"); *cf. Tyler*, 533 U.S. at 664 (AEDPA's "stringent time limit" means that the courts of appeals should not have to undertake "the difficult legal analysis that can be required to determine questions of retroactivity in the first instance"). Accordingly, when an application depends on the extension of precedent rather than its application, authorization should be denied.

This Court should deny defendant's application because it is "clear as a matter of law," from both *Johnson*'s holding and its express disavowal of an intent to cast doubt on the constitutionality of other statutes, that Higgs's "identified constitutional rule"—*i.e.*, *Johnson*'s rule invalidating the ACCA's residual clause—"does not apply" to his situation because the defendant is not challenging an ACCA-enhanced sentence. There may be reasonable arguments why the

11

*Johnson* rule *should* be extended to a situation like defendant's, but that is insufficient to justify a successive collateral attack. *In re Garner* illustrates this point. Garner sought leave to file a successive collateral attack based on *Roper v. Simmons*, 543 U.S. 551 (2005), which held that the Eighth Amendment forbids the execution of a defendant who was 18 at the time of his crime. Although Garner conceded that he was more than 18 years old at the time of his crime, he argued that his death sentence was invalid under *Roper* because he had the mental age of a 14-year-old. The Sixth Circuit denied Garner's application because *Roper* had not articulated the rule of law upon which Garner's claim was based: "[t]he *Roper* Court did not hold that the Eighth Amendment prohibits a death sentence for an offender with a 'mental age' of less than 18. Rather, *Roper* clearly held that a sentence of death may not be imposed upon an offender with a *chronological* age of less than 18." *Id*. at 535-536 (emphasis in original). And while the court acknowledged reasonable policy arguments supporting Garner's novel mental-age rule, "in this analysis," the court, acting as a gatekeeper, was "confined to a consideration of constitutional law as it presently stands"; and because Garner's claim depended on a novel "extension of the law," Garner, by definition, had not made a prima facie showing. *Id*.; *see also In re Neville*, 440 F.3d 220 (5th Cir. 2006) (denying leave to file successive motion that sought an extension of a new

rule).  The same reasoning applies here.  And nothing in *Welch* leads to a different result.  Higgs's application should therefore be denied.

The denial of a defendant's application is without prejudice to his right to file a new application in the event the law changes.  *See Hernandez v. United States*, 226 F.3d 839, 841 (7th Cir. 2000).  The courts of appeals to consider *Johnson*'s applicability to statutes other than the ACCA have divided on that question, and the Fifth Circuit recently heard en banc argument on § 16(b)'s constitutionality after granting rehearing in *United States v. Gonzalez-Longoria*, 813 F.3d 225 (5th Cir. 2016).  The existence of a circuit conflict creates a reasonable probability that the Supreme Court will grant certiorari, *see* S. Ct. R. 10(a), and that likelihood is enhanced by the fact that the conflict concerns the constitutionality of a federal statute.  If and when the Supreme Court eventually grants review and holds that *Johnson* extends to statutes like § 924(c), then a defendant could, within a year of that new decision, file a new application requesting leave to file a successive § 2255 motion invoking that new rule of law.  Of course, even then, defendant's claim would fail for the other reasons stated in this response—but Higgs (as well as other defendants) seeking to challenge a § 924(c) conviction could obtain authorization for a successive § 2255 then.

2.   **Higgs's Multiple Convictions For Kidnapping Plainly Qualify As "Crime[s] Of Violence" For Purposes Of The 18 U.S.C. § 924(c) "Force" Clause.**

An offense is committed under the kidnapping statute when the defendant "unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person, except in the case of a minor by the parent thereof" and that action impacts interstate or foreign commerce in any number of enumerated ways. *See* 18 U.S.C. § 1201(a). "To establish a violation of § 1201(a), the government must prove that: (1) the victim was seized, confined, inveigled, decoyed, kidnapped, abducted, or carried away; (2) the victim was held; and (3) federal jurisdiction." *United States v. Wills*, 234 F.3d 174, 177 (4th Cir. 2000) (hereinafter "*Wills I*") (footnote omitted).

While the first prong can be accomplished through deceit rather than force, precedent instructs that the second prong necessarily requires the exercise of violent force or the threat thereof, as contemplated by *Johnson*. This Court has determined that, in the context of this statute, "to hold means to detain, seize, or confine a person in some manner against that person's will." *United States v. Wills*, 346 F.3d 476, 493 (4th Cir. 2003) (hereinafter "*Wills II*"); *see United States v. Blackmon*, 209 F. App'x 321, 325 (4th Cir. Dec. 13, 2006) (unpublished) (acquittal under § 1201(a) only warranted if jury found that defendant mistakenly believed victim *consented* to being "held"); *United States v. Higgs*, 353 F.3d 281, 313 (4th Cir. 2003) (rejecting challenge to the "holding" element where the evidence supported the conclusion that the kidnapper "was prepared to confine [his

14

inveigled victims] at gunpoint if necessary"). *See also United States v. Boone*, 959 F.2d 1550, 1555 n.5 (11th Cir. 1992) (noting that "inveiglement becomes an unlawful form of kidnapping under the statute when the alleged kidnapper interferes with his victim's actions, exercising control over his victim through the willingness to use forcible action should his deception fail").

Further, the Supreme Court has found that "[i]t is this 'involuntariness of seizure and detention which is the very essence of the crime of kidnaping.'" *See United States v. Lentz*, 383 F.3d 191, 200 (4th Cir. 2004) (quoting and citing *Chatwin v. United States*, 326 U.S. 455, 460 (1946)). In order to hold a victim against his or her will, then, the alleged kidnapper must use, attempt to use, or threaten to use force necessary to restrain that individual. In other words, because the federal kidnapping statute requires an "involuntar[y] . . . seizure and detention," *Lentz*, 383 F.3d at 200, and requires that the victim be detained, seized, or confined "against that person's will," *Wills II*, 346 F.3d at 493, the federal kidnapping offense necessarily involves the use, attempted use, or threatened use of force. Kidnapping victims cannot be held against their wills by kidnappers without at least a threatened use of force. The Supreme Court has observed that "a person would 'use . . . physical force against' another when pushing him," *Leocal v. Ashcroft*, 543 U.S. 1, 9 (2004), and in the context of discussing batteries, the Court has defined force in terms of what it was "capable of causing" – namely,

"physical pain or injury to another person." *Johnson*, 559 U.S. at 140. Federal kidnapping's requirement of detaining a person against that person's will fits within that understanding of physical force and is a "force strong enough to constitute 'power.'" *Johnson*, 559 U.S. at 142. *Cf. United States v. Mechor-Mecono*, 620 F.3d 1180, 1186 (9th Cir. 2010) (placing another in fear of being poisoned necessarily involves threatening to force the poison on the victim). Thus, kidnapping appropriately qualifies as a predicate crime of violence under § 924(c)(3)(A).

### 3. Higgs's Multiple Convictions For First-Degree Murder Plainly Qualify As "Crime[s] Of Violence" For Purposes Of The 18 U.S.C. § 924(c) "Force" Clause.

No federal court has held after *Johnson* that murder is not a crime of violence. Higgs argues that murder does not satisfy § 924(c)(3)(A) because (1) felony murder does not require the intentional use of violent force because a person could die as a result of an accident or reckless conduct during the course of a felony, and (2) premeditated murder does not categorically require the use of violent force because murder may be accomplished through poisoning, trickery, or withholding a life-saving medication or sustenance.

Higgs's argument that murder can be accomplished without force should be rejected. First, the defendant's narrow view of force would erroneously imply that murder has never been properly classified as a crime of violence under § 924(c)—

16

even without *Johnson.* Section 924(c)(3)(B), like § 16(b), turns on "a substantial risk that *physical force* against the person or property of another may be used in the course of committing the offense." Section 924(e)(2)(B)(ii) of the ACCA, by contrast, applies to "any crime" that "involves conduct that presents a serious potential risk of *physical injury* to another." Because both prongs of the crime-of-violence definitions in § 924(c)(3) and § 16 turn on "physical force," defendant's theory that murder can be accomplished without force, would imply that murder could never be a crime of violence under either statute even before *Johnson.* But again that is obviously wrong.

More fundamentally, defendant's theory cannot be reconciled with either Supreme Court precedent or the structure and legislative history of the statute. Courts "must, as usual, 'interpret the relevant words not in a vacuum, but with reference to the statutory context.'" *Torres*, 136 S. Ct. at 1626 (quoting *Abramski*, 134 S. Ct. 2259, 2267 (2014)). While interpreting the ACCA's elements clause, the Supreme Court has defined "physical force" as "force capable of causing physical pain or injury to another person." *Johnson v. United States*, 559 U.S. 133, 140 (2010). But the Court did not limit the means of causing injury, and the Court later *rejected* a defendant's argument that "although '[p]oison may have 'forceful physical properties' as a matter of organic chemistry, . . . no one would say that a poisoner 'employs' force or 'carries out a purpose by means of force' when he or

17

she sprinkles poison in a victim's drink.'" *United States v. Castleman*, 134 S. Ct. 1405, 1415 (2014). More recently, in concluding that arson may involve "physical force" within the meaning of § 16, the Supreme Court concluded that some state arson offenses would fall outside the scope of § 16 not because burning property does not involve "physical force," but because § 16 is limited to physical force against the "property of another." Hence, § 16 "would not reach arson in the many States defining that crime to include the destruction of one's own property." *Torres*, 136 S. Ct. at 1630. And as the dissent in *Torres* noted, this Court has already agreed with the broad reading of "physical force" under § 16. *Id.* at 1637 n.1 (citing *Mbea v. Gonzales*, 482 F.3d 276, 279 (4th Cir. 2007)).

The legislative history of § 924(c) confirms this reading. When the crime of violence standard was added to § 924(c) in 1984, *see, e.g., Bailey v. United States*, 516 U.S. 137, 147-48 (1995), a Senate report explained that § 924(c) would reach offenses such as bank robbery under 18 U.S.C. § 2113(a) and assaulting a federal officer under 18 U.S.C. § 111. "As amended by Part D, Section 924(c) provides for a mandatory, determinate sentence for a person who uses or carries a firearm during and in relation to any federal 'crime of violence,' including offenses such as bank robbery or assault on a federal officer." S. Rep. 98-225, 98th cong., 1st sess., 1984 U.S.S.C.A.N. 3182, 3491 (Aug. 4, 1983). These are offenses that satisfy the elements clause of § 924(c), as confirmed by the legislative history of the ACCA.

As the D.C. Circuit has noted, Congress concluded that offenses that have as "an element the use, attempted use or threatened use of physical force against a *person*" would "include such felonies involving physical force against a person such as murder, rape, assault, robbery, etc." *Mathis*, 963 F.2d at 407 (quoting H.R. Rep. No. 849, 99th Cong., 2d Sess. 3 (1986)). It is profoundly unpersuasive that *assaulting* a federal officer under § 111 would count as a crime of violence under § 924(c)(3), but that *murder* does not.

Likewise, using the slight force needed to pull the trigger of a gun, causing death, constitutes a use of physical force. *Castleman*, 134 S. Ct. at 1415 (citing that example). *Cf. Leocal v. Ashcroft*, 543 U.S. 1, 9 (2004) (interpreting § 16(a) and concluding that "a person would 'use . . . physical force against' another when pushing him"). Indeed, "[s]pecifying that 'physical force' must rise to the level of bodily injury does not suggest that without the qualification 'physical force' would consist of the merest touch. It might consist, for example, of only that degree of force necessary to inflict pain—a slap in the face, for example." *Johnson*, 559 U.S. at 143.

Defendant's view would also gut the federal solicitation statute, 18 U.S.C. § 373, which was enacted in 1984 when Congress added the crime of violence standard to § 924(c), and § 373 has *solely* an elements clause. Yet § 373 does

cover solicitation to commit murder. *United States v. Cardwell*, 433 F.3d 378 (4th Cir. 2005).

Higgs argues that felony-murder liability eliminates murder from § 924(c)(3)(A) and § 373. But that is wrong. Felony-murder law would satisfy § 924(c)(3)(A). *See, e.g., Wooden v. Commonwealth*, 284 S.E.2d 811 (Va. 1981). Defendant's arguments also rely on *United States v. Torres-Miguel*, 701 F.3d 165 (4th Cir. 2012), and other cases that (1) do not construe § 924(c), (2) predate Supreme Court cases like *Castleman* and *Torres*, and (3) would result, on defendant's view, in no federal offense ever satisfying § 924(c)(3)(A). Even this Court's recent ruling in *United States v. McNeal*, 818 F.3d 141, 152-53 (4th Cir. 2016), holding that bank robbery satisfies § 924(c)(3)(A), would be wrong on defendant's view because bank robbery can be accomplished by shoving a bank teller to the ground while robbing the bank. But both bank robbery and murder are paradigmatic crimes of violence, as Congress recognized.

> **4. Alternatively, This Court Should Hold Higgs's Application In Abeyance Pending Several Potentially Case-Dispositive Cases That Are Currently Pending In This Court.**

Left unsaid in Higgs's application is the fact that a number of potentially case-dispositive issues are currently pending in this Court. One of the relevant cases has completed briefing and oral argument, while the others are in more preliminary stages. Specifically:

- *In re: Creadell Hubbard*, No. 15-276, addresses whether the Supreme Court's ruling in *Johnson* applies retroactively on collateral review to the Section 924(c) residual clause. That, of course, is an issue of paramount relevance to this case. *Hubbard* was argued on January 28, 2016, and the case remains pending. If this Court rules against Hubbard, then even Higgs must admit that he would have no basis for filing a successive § 2255 motion.

- *United States v. Donald Walker*, No. 15-4301, and *United States v. Bradley Campbell*, No. 15-4281, both address whether a conviction under the federal kidnapping statute qualifies as a "crime of violence" for purposes of § 924(c), in light of *Johnson*. The *Walker* case has completed briefing and was tentatively calendared for this Court's May 2016 argument session, before being continued to its "awaiting calendar" docket. The *Campbell* case is currently at the briefing stage, with the defendant's reply brief due on May 26, 2016. If this Court rules that kidnapping is (and remains) a § 924(c) "crime of violence," then Higgs again would have no legal basis to pursue a successive § 2255 motion.

Stated simply, the principle of judicial economy counsels that if this Court does not wish to immediately deny Higgs's application because first-degree premeditated murder is a § 924(c) "crime of violence,"[5] it should hold Higgs's application in abeyance until the above-described cases have been decided. If kidnapping is found to be a § 924(c) predicate—or if this Court finds that *Johnson* does not apply on collateral review to convictions secured under § 924(c)—then Higgs's application must be denied as a matter of law, and neither this Court nor the district court will have expended any resources in the interim. Conversely, if

---

[5] *Cf. United States v. Hare*, ___ F.3d ___, 2016 WL 1567051, * 10 (4th Cir. 2016) (avoiding the merits of defendants' argument that Hobbs Act robbery is no longer a § 924(c) "crime of violence" post-*Johnson*, because the jury convicted the defendants of qualifying predicate drug trafficking crimes).

kidnapping is found *not* to be a "crime of violence," then this Court can address the question of whether Higgs has made out a prima facie case that his multiple first-degree premeditated murder convictions are not "crime[s] of violence" at that time. Either way, holding this case in abeyance will promote the interests of "judicial efficiency [and] conservation of scarce judicial resources," *United States v. Metzger*, 3 F.3d 756, 758 (4th Cir. 1993). That is especially the case here, where Higgs's application raises challenges only to his firearms convictions, and raises no claims whatsoever with respect to his nine separate death sentences.

## CONCLUSION

WHEREFORE, because (1) the Supreme Court has not set forth a new rule of constitutional law applicable to 18 U.S.C. § 924(c), and (2) premeditated first-degree murder is unquestionably a "crime of violence" for purposes of § 924(c), the government respectfully requests that this Court deny the defendant's application for leave to file a successive 28 U.S.C. § 2255 motion, without prejudice to his ability to file a new application in the event the applicable law changes. Alternatively, the government requests that this Court hold consideration of Higgs's application in abeyance pending the Court's decisions in *Hubbard* (No. 15-276), *Walker* (No. 15-4301), and *Campbell* (No. 15-4281).

Respectfully submitted,

Rod J. Rosenstein
United States Attorney

By:       /s/
Debra L. Dwyer
Assistant United States Attorney

June 3, 2016

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 3rd day of June 2016, a copy of the foregoing Motion was delivered via ECF to Matthew C. Lawry, Federal Community Defender Office for the Eastern District of Pennsylvania; and Stephen H. Sachs, WilmerHale LLP.

By:       /s/
Debra L. Dwyer
Assistant United States Attorney