**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

―――――――――――

**No. 15-276**

―――――――――――

In Re:  CREADELL HUBBARD,

Movant.

―――――――――――

On Motion under 28 U.S.C. § 2244 for Order Authorizing District Court to Consider Second or Successive Application for Relief under 28 U.S.C. § 2255 in the United States District Court for the Eastern District of North Carolina, at Raleigh.  Terrence W. Boyle, District Judge.  (5:88-cr-00040-BO-1)

―――――――――――

Argued:  January 28, 2016                 Decided:  June 8, 2016

―――――――――――

Before GREGORY and HARRIS, Circuit Judges, and DAVIS, Senior Circuit Judge.

―――――――――――

Motion granted by published opinion.  Judge Gregory wrote the opinion, in which Judge Harris and Senior Judge Davis joined.

―――――――――――

**ARGUED**: Paul K. Sun, Jr., ELLIS & WINTERS LLP, Raleigh, North Carolina, for Movant.  Seth Morgan Wood, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Respondent.  **ON BRIEF**: Kelly Margolis Dagger, ELLIS & WINTERS LLP, Raleigh, North Carolina, for Movant.  Thomas G. Walker, United States Attorney, Jennifer P. May-Parker, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Respondent.

―――――――――――

GREGORY, Circuit Judge:

Movant Creadell Hubbard seeks pre-filing authorization to pursue a successive § 2255 petition for habeas relief. For the reasons that follow, we grant his motion.


I.

On July 19, 1988, Creadell Hubbard was indicted on the following numbered criminal counts: (1) armed bank robbery, 18 U.S.C. § 2113(a) & (d); (2) carrying a firearm during a crime of violence, id. § 924(c)(1) & (3); (3) possessing stolen money, id. § 2113(c) & (d); and (4) conspiracy to possess stolen money, id. Hubbard was convicted by a jury on all four counts. The district court determined at sentencing that Hubbard was a career offender under U.S. Sentencing Guidelines Manual § 4B1.1 (U.S. Sentencing Comm'n 1988) ("Sentencing Guidelines") because two of his prior convictions were for "crime[s] of violence." United States v. Hubbard, No. 89-5146, 1990 WL 194520, at *2 (4th Cir. Dec. 10, 1990) (unpublished). The prior convictions were for second-degree murder and Kentucky third-degree burglary. Id. at *3. Counts 1, 3, and 4 were merged for sentencing purposes, and the district court imposed a 327-month term of imprisonment for those counts, along with a consecutive sixty-month prison term for Count 2. In addition, the district court imposed a three-year term of supervised release.

2

Hubbard timely appealed to this Court, citing as error the district court's (1) failure to sever his trial from that of his codefendant; (2) denial of his motion for judgment of acquittal for insufficiency of the evidence; and (3) finding that Kentucky third-degree burglary was a predicate crime of violence supporting his career-offender status. Id. at *1-3. Hubbard's convictions and sentence were affirmed. Id. at *2, *4. In April 1997, Hubbard filed a motion to vacate under 28 U.S.C. § 2255. Proceedings on that motion ultimately resulted in summary judgment against Hubbard and dismissal of his subsequent appeal to this Court. United States v. Hubbard, No. 99-7147, 2000 WL 328084, at *1 (4th Cir. Mar. 29, 2000) (unpublished).

In August 2015, Hubbard filed a pro se motion with this Court seeking an order authorizing the district court to consider a successive § 2255 motion, citing Johnson v. United States, 135 S. Ct. 2551 (2015). We now address that motion.

II.

Successive petitions for federal habeas corpus review under § 2255 may not be filed in a district court without prior approval from a circuit court of appeals. 28 U.S.C. § 2255(h); In re Vassell, 751 F.3d 267, 268-69 (4th Cir. 2014). In deciding whether to grant the motion for pre-filing authorization, this Court must determine whether it relies on

3

> (1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or
>
> (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

§ 2255(h). It is the latter of these that Hubbard seeks to show.

Hubbard argues that the Supreme Court's decision in Johnson produced a new rule of constitutional law made retroactive by that Court, and that he is entitled to seek relief under the new rule. While his motion was pending, the Supreme Court decided Welch v. United States, 136 S. Ct. 1257 (2016), which confirmed Hubbard's position that the rule in Johnson is retroactive. Id. at 1265. With the retroactivity of Johnson established, it remains for this Court to determine whether the rule can support Hubbard's habeas claims.

Hubbard argues that the holding in Johnson can provide him relief in two ways. First, he seeks to apply Johnson to eliminate his conviction for carrying a firearm during a crime of violence (Count 2), arguing that federal armed bank robbery (Count 1 and the predicate for Count 2) is no longer a crime of violence under the rule established in Johnson. Second, he seeks to challenge his career-offender status by arguing that, under Johnson, Kentucky third-degree burglary no longer

4

qualifies as a crime of violence under the Sentencing Guidelines. Since Hubbard's motion was filed, this Court has decided, consonant with our precedent, that federal armed bank robbery is a crime of violence, specifically under the "force clause" of 18 U.S.C. § 924(c)(3), and that the holding in Johnson is inapplicable. United States v. McNeal, 818 F.3d 141, 151-57 (4th Cir. 2016). As a result, the only one of Hubbard's claims that remains viable is his argument that his Kentucky third-degree burglary conviction is no longer a predicate for establishing his career-offender status.

In analyzing the motion, we need not decide whether Hubbard will ultimately prevail on his claim, only whether he is entitled to pursue a successive claim. In re Williams, 330 F.3d 277, 282 (4th Cir. 2003). At this stage, the moving party need only "make[] a prima facie showing that the application satisfies the requirements of [§ 2244]" to gain pre-filing authorization. 28 U.S.C. § 2244(b)(3)(C).[1] Thus, Hubbard only needs to show that he "presents a claim that 'relies on a [qualifying] new rule of constitutional law,'" In re Vassell, 751 F.3d at 271 (quoting § 2244(b)(2)(A)) (alteration in Vassell) (emphasis added), and that he makes "a sufficient

_____

[1] While Hubbard's motion relies on § 2255, that provision incorporates by reference the factors listed in § 2244.

showing of possible merit to warrant a fuller exploration by the district court," Williams, 330 F.3d at 281 (citation and internal quotation marks omitted).

We now turn to the substance of Hubbard's remaining claim.

III.

In 2015, the Supreme Court struck the residual clause of the Armed Career Criminal Act ("ACCA") for being unconstitutionally vague in violation of the Due Process Clause of the Fifth Amendment. Johnson, 135 S. Ct. at 2555-57. "The void-for-vagueness doctrine prohibits the government from imposing sanctions 'under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement.'" Welch, 136 S. Ct. at 1262 (quoting Johnson, 135 S. Ct. at 2556). The now-invalidated ACCA residual clause made any crime punishable by more than one year in prison and that "otherwise involve[d] conduct that present[ed] a serious potential risk of physical injury to another" a violent felony. 18 U.S.C. § 924(e)(2)(B)(ii). Applying the vagueness doctrine, the Supreme Court concluded that the ACCA's residual clause was unconstitutional under both standards: it failed to provide "fair notice to defendants" and "invite[d] arbitrary enforcement by judges." Johnson, 135 S. Ct. at 2557.

In this case, the parties do not dispute that Johnson would permit the Court to authorize a petitioner to file a successive § 2255 motion under the appropriate circumstances: Johnson announced a new rule of constitutional law that the Supreme Court made retroactive and that was previously unavailable. See 28 U.S.C. § 2255(h)(2). Instead, the government argues that Hubbard's claim fails on two grounds: first, that Johnson applies only to the ACCA's residual clause, not to residual clauses found at 18 U.S.C. §§ 16(b) & 924(c)(3)(B); and second, that Hubbard's challenge fails regardless because his sentence was determined using the Sentencing Guidelines (which, until November 1989, incorporated by express reference the definition of "crime of violence" set forth in § 16(b) into the career-offender guideline), making application of Johnson to this case procedural (rather than substantive) and therefore not retroactive. We are not persuaded by either of the government's contentions.

### A.

Turning to the government's first argument, this Court must answer whether the Johnson rule applies to the distinct but similar residual clause at issue in Hubbard's case.

"In determining whether a prior conviction triggers a sentence enhancement under the Sentencing Guidelines, we approach the issue categorically, looking only to the fact of

7

conviction and the statutory definition of the prior offense." United States v. Montes-Flores, 736 F.3d 357, 364 (4th Cir. 2013) (citation and internal quotations omitted). The statute under which Hubbard was convicted defines third-degree burglary as burglary of a building, and "building" refers to both dwellings and nondwellings. Hubbard, 1990 WL 194520, at *3 (citing Ky.Rev.Stat.Ann. §§ 511.010, 511.040). Hubbard was sentenced on April 21, 1989, as a career offender under U.S.S.G. § 4B1.1,[2] which in turn relied on § 4B1.2 for definitions of key terms. At that time, as noted, § 4B1.2 defined the term "crime of violence" by reference to 18 U.S.C. § 16. U.S.S.G. § 4B1.2(1) (U.S. Sentencing Comm'n 1988); see also 18 U.S.C. § 16(b) (1988) (defining "crime of violence" as one that "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense"). Under that definition the district court found, and a panel of this Court affirmed, that Kentucky

---

[2] At the time, the relevant provision read:

> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time of the instant offense, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1 (U.S. Sentencing Comm'n 1988).

8

third-degree burglary was a crime of violence.  Hubbard, 1990 WL 194520, at *3.  The offense was therefore treated as one of the predicate crimes of violence contributing to Hubbard's career-offender status for purposes of applying the Sentencing Guidelines.  Hubbard now seeks permission to challenge his career-offender status by applying the new constitutional rule announced in Johnson to the § 16(b) definition of a crime of violence (and thereby to the then-relevant version of U.S.S.G. § 4B1.2).

The government argues that Johnson only invalidated the residual clause of the ACCA, 18 U.S.C. § 924(e)(2)(B), and has no application to 18 U.S.C. § 16(b) or other nonidentical residual clauses.[3]  Hubbard counters that his burden is merely to show that it is plausible that the rule announced in Johnson renders § 16(b) unconstitutionally vague.  In other words, he argues that the government is making a merits argument that

---

[3] The government also argued elsewhere in its brief that the rule in Johnson does not apply to 18 U.S.C. § 924(c)(3)(B).  We no longer need to address that argument directly because McNeal resolved the only relevant issue presented in this case (whether armed bank robbery is a crime of violence) that possibly involved that provision.  We note, however, that the language of § 16(b) is identical to that in § 924(c)(3)(B), and we have previously treated precedent respecting one as controlling analysis of the other.  United States v. Fuertes, 805 F.3d 485, 500 (4th Cir. 2015); see also  United States v. Taylor, 814 F.3d 340, 377 (6th Cir. 2016) (relying on Supreme Court's § 16(b) precedent to interpret § 924(c)(3)(B)); United States v. Serafin, 562 F.3d 1105, 1108 & n.4 (10th Cir. 2009) (same).

would be properly presented to the district court in response to a § 2255 motion but that is premature at this preliminary stage.

As previously explained, § 16(b) defines a "crime of violence" as one that "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." § 16(b). Like the provision invalidated by Johnson, § 16(b) is a residual clause expanding the definition of a crime of violence. However, the Court in Johnson was dealing with the ACCA's residual clause, which was formulated somewhat differently. See Fuertes, 805 F.3d at 499 n.5 (explaining that "[t]he two formulations . . . are similarly worded but not identically so"). It stated that a crime was an appropriate predicate offense if it "otherwise involve[d] conduct that present[ed] a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii). This textual difference, the government argues, combined with several other distinguishing characteristics, leaves § 16(b) beyond the scope of the rule articulated in Johnson. Specifically, the government argues that § 16(b) is "materially narrower" than the ACCA residual clause, that it does not contain a "confusing list of enumerated offenses," and that the ACCA residual clause reaches conduct occurring outside the commission of an offense while § 16(b) does not.

10

Given the relatively low bar Hubbard must get over, the government's arguments are unconvincing. Even accepting them all as undisputed, which they are not, it is not at all clear these arguments would be enough to show that Hubbard has failed to establish a prima facie case. All Hubbard need show is that there is "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." § 2255(h)(2). In fact, it is not entirely clear which of these three § 2255(h)(2) elements the government contends Hubbard does not meet. The most plausible interpretation of the government's position is that Hubbard's present motion fails the third element—that the new rule was previously unavailable—not because the Johnson rule was previously available to him, but because the third § 2255(h)(2) element implies that a movant may only obtain authorization where the new rule becomes available to him insofar as it can affect his case. Thus, the government could be understood to argue, a plaintiff cannot proceed even from this early stage if the new constitutional rule cannot affect the provision on which his conviction or sentence was based. The argument fails here, however, because it is for the district court to determine whether the new rule extends to the movant's case, not for this court in this proceeding. In re Encinias, --- F.3d ----, 2016 WL 1719323 (10th Cir. Apr. 29, 2016) (per curiam); see also In

11

re Robinson, No. 16-11304-D, --- F.3d ----, 2016 WL 1583616, at *2 n.2 (11th Cir. Apr. 19, 2016) (Martin, J., concurring) (noting that every circuit except the Eleventh has held or assumed Johnson applies to the Sentencing Guidelines).

The government is making a merits argument: its contention that the Johnson rule does not render similar language in a closely related provision unconstitutional is an argument about the proper application of the new rule in Johnson. And at this stage, a merits argument faces an almost insurmountable hurdle: while determining whether to authorize a successive petition "may entail a cursory glance at the merits . . . the focus of the inquiry must always remain on the § 2244(b)(2) standards." Williams, 330 F.3d at 282; see also id. (noting that, for example, authorization to challenge a conviction for constitutional error will be granted where application "adequately alleging some constitutional violation" is presented (emphasis added)). The fact that two federal circuit courts already have concluded that § 16(b) is unconstitutionally vague under Johnson, see United States v. Vivas-Ceja, 808 F.3d 719, 720 (7th Cir. 2015); Dimaya v. Lynch, 803 F.3d 110 (9th Cir. 2015), likely is enough to establish that Hubbard has made "a sufficient showing of possible merit to warrant a fuller

12

exploration by the district court," Williams, 330 F.3d at 281.[4] In any event, that Hubbard has met this threshold burden is confirmed by our own "glance" at the government's merits arguments.

In Johnson, the Supreme Court found "[t]wo features of the [ACCA's] residual clause" problematic: that it "leaves grave uncertainty about how to estimate the risk posed by a crime" and that it "leaves uncertainty about how much risk it takes for a crime to qualify as a violent felony." Johnson, 135 S. Ct. at 2557-58 (emphasis added). The first of these problems resulted largely from the ACCA residual clause's invocation of "a judicially imagined 'ordinary case' of a crime" rather than the "real-world facts or statutory elements." Id. at 2557. The Court noted that such an analysis put judges in an impossible

---

[4] We note that the circuits are divided as to whether § 16(b) and § 924(c)(3)(B) are unconstitutionally vague under Johnson. A panel of the Fifth Circuit agreed with the Seventh and Ninth Circuits that Johnson renders § 16(b) unconstitutionally vague, but the court has granted rehearing. United States v. Gonzalez-Longoria, 813 F.3d 225 (5th Cir. 2016), reh'g en banc ordered, 815 F.3d 189. The Sixth Circuit has concluded that § 924(c)(3)(B) is not unconstitutionally vague, Taylor, 814 F.3d at 376, completing (for now) the circuit split. We have previously declined (as unnecessary to the decision) to opine on whether Johnson's holding applies to the residual clauses embodied in those provisions, e.g., Fuertes, 805 F.3d at 499 n.5, and in the context of our consideration of Hubbard's motion for authorization to proceed in the district court, we have no occasion to rule on the merits of his claim beyond the "glance" discussed in text.

13

position: "How does one go about deciding what kind of conduct the 'ordinary case' of a crime involves?" Id.; see also 18 U.S.C. § 924(e)(2)(B)(ii) (defining a violent felony as one that "otherwise involves conduct that presents a serious potential risk of physical injury to another" (emphasis added)).

The second problematic feature of the ACCA residual clause, uncertainty regarding the quantum of risk necessary for a crime to become a violent felony, arises from two textual sources: the requirement that the "judge-imagined abstraction" of the ordinary case be analyzed using a vague "serious potential risk" standard, and the existence of a "confusing" enumerated list of exemplary offenses. Johnson, 135 S. Ct. at 2558. The Court indicated that a vague standard is one thing, but applying it to imaginary instances of crimes is another. Id. Moreover, the standard was made more vague by tying it to four enumerated offenses—burglary, arson, extortion, or any offense involving the use of explosives—which "are 'far from clear in respect to the degree of risk each poses.'" Id. (quoting Begay v. United States, 553 U.S. 137, 143 (2008)).

As Hubbard argues, § 16(b) presents both of these issues. It invokes the ordinary case by referring, not to the facts of the case, but to the "nature" of the offense. 18 U.S.C. § 16(b). The provision also applies almost the exact same vague standard—"involves a substantial risk"—to the abstract ordinary

14

case.  Id.  This Court has acknowledged the similarities between the "operative language" in the ACCA's residual clause struck down in Johnson and that in § 16(b) at issue here.  See United States v. Martin, 215 F.3d 470, 474 n.4 (4th Cir. 2000).  Only one of the problems with ACCA's residual clause is absent from § 16(b): the enumerated list of offenses.  But while the Johnson Court noted that the list made the residual clause more vague rather than less so, its reliance on that issue was limited.  See Vivas-Ceja, 808 F.3d at 723 ("The list [of enumerated offenses] itself wasn't one of the 'two features' that combined to make the clause unconstitutionally vague.").  We cannot determine, at a glance, whether this single dissimilarity is sufficient to distinguish § 924(e)(2)(B)(ii) from § 16(b).  It would therefore be for the district court to make that determination following a more detailed briefing of this merits issue.

The same is true of the government's other principal argument, namely, that § 16(b) is "materially narrower" than the ACCA provision.  It is true that § 16(b) limits its application to instances involving the "risk that physical force" will be used "in the course of committing the offense," Leocal v. Ashcroft, 543 U.S. 1, 10 & n.7 (2004) (quoting § 16(b)), whereas the ACCA's residual clause reached risks precipitated by the offense but occurring after its completion, see Johnson, 135

15

S. Ct. at 2557. In fact, the Johnson Court noted that "the inclusion of burglary and extortion among the enumerated offenses preceding the [ACCA] residual clause confirms that the court's task also goes beyond evaluating the chances that the physical acts that make up the crime will injure someone" because violence related to those crimes is most likely to occur after the burglary or extortion has already been committed. Id. But this distinction between the ACCA residual clause and § 16(b), as presented by the government, goes more to the breadth of the two clauses than their vagueness.

The Johnson Court stated that its concern with the ACCA residual clause was that "unlike the part of the definition of a violent felony that asks whether the crime 'has as an element the use . . . of physical force,' the residual clause asks whether the crime 'involves conduct' that presents too much risk of physical injury." Id. (alteration in original). Likewise, § 16(b) eschews the reference to the elements of a crime found in the preceding § 16 force clause, 18 U.S.C. § 16(a), instead addressing itself to any crime that "involves a substantial risk that physical force against the person or property of another may be used," § 16(b). Although facts relevant to an ACCA analysis occupy a broader period of time, § 16(b) still asks courts to assess "the risk that the use of physical force against another might be required in committing a crime,"

16

Leocal, 543 U.S. at 10 (emphasis added), an exercise we cannot say at this stage does not "invite[] arbitrary enforcement by judges," Johnson, 135 S. Ct. at 2556.

Moreover, and perhaps paradoxically, it is largely the enumerated offenses in the ACCA which caused that residual clause's greater breadth. Johnson, 135 S. Ct. at 2557. As such, our reasons for rejecting the list of enumerated offenses as a sufficient point of distinction apply equally here. The Johnson Court's focus was on the abstraction involved in analyzing an ordinary case, and the distinction the government has raised between these provisions does not render it implausible that § 16(b), too, is unconstitutionally vague. Again, that is a merits argument that is sufficiently close to warrant presentation to the district court. In re Encinias, --- F.3d at ---, 2016 WL 1719323, at *1.

B.

The government's second argument is that the Sentencing Guidelines are procedural rules, that application of the Johnson rule to the Sentencing Guidelines would therefore be procedural, and that as a result Hubbard cannot satisfy the second § 2244 prima facie element (retroactive application) because, "[n]ew rules of constitutional criminal procedure are generally not applied retroactively on collateral review." United States v. Sanders, 247 F.3d 139, 147-48 (4th Cir. 2001) (citing Teague v.

17

Lane, 489 U.S. 288 (1989) (plurality opinion)).  In other words, while it admits the Johnson rule is substantive when applied to § 924(c)(3)(B),[5] the government contends it is merely procedural when applied to the Sentencing Guidelines, and that retroactive application is therefore barred by Teague.

A rule is substantive if it addresses "'substantive categorical guarante[es] accorded by the Constitution,' such as a rule 'prohibiting a certain category of punishment for a class of defendants because of their status or offense.'"  Frazer v. South Carolina, 430 F.3d 696, 704 n.4 (4th Cir. 2005) (quoting Saffle v. Parks, 494 U.S. 484, 494 (1990)).  "In contrast, rules that regulate only the manner of determining the defendant's culpability are procedural."  Schriro v. Summerlin, 542 U.S. 348, 353 (2004).  The government argues that § 16(b) as incorporated into the Sentencing Guidelines is procedural because (1) it does not change the range of legally permissible outcomes (which are limited by statutory minimums and maximums) and (2) errors in calculating a defendant's advisory guidelines range have been characterized as procedural by the Supreme Court.  Neither argument is convincing.

To begin, the decision in Welch declared unequivocally that Johnson was "a substantive decision and so has retroactive

---

[5] See note 4, supra.

18

effect under Teague in cases on collateral review," Welch, 136 S. Ct. at 1265, and the government has cited no case to support the proposition that a rule can be substantive in one context but procedural in another. Cf. Danforth v. Minnesota, 552 U.S. 264, 266 (2008) ("New constitutional rules announced by this Court that place certain kinds of primary individual conduct beyond the power of the States to proscribe, as well as 'watershed' rules of criminal procedure, must be applied in all future trials, all cases pending on direct review, and all federal habeas corpus proceedings.").

The Welch Court also noted that "[b]y striking down the residual clause as void for vagueness, Johnson changed the substantive reach of the Armed Career Criminal Act, altering 'the range of conduct or the class of persons that the [Act] punishes.'" Welch, 136 S. Ct. at 1265 (quoting Schriro, 542 U.S. at 353). Likewise, striking down the residual clause embodied in § 16(b), and thereby removing it from the applicable version of the Sentencing Guidelines, would "alter[] the range of conduct or the class of persons that the [Sentencing Guidelines] punishes." Id. (quotation marks omitted). That is, the "substantive reach" of the Sentencing Guidelines would be altered just as much as was true for the ACCA. If the Johnson rule does invalidate § 16(b), some crimes will no longer fit the Sentencing Guidelines' definition of a crime of violence and

19

will therefore be incapable of resulting in a career-offender sentencing enhancement. In such cases, application of the Johnson rule will operate to "prohibit[] a certain category of punishment for a class of defendants because of their status." Frazer, 430 F.3d at 704 n.4. A defendant may still be subject to the same statutory range of punishments, but "'even the use of impeccable factfinding procedures could not legitimate' a sentence based on that clause" (that is, U.S.S.G. § 4B1.2(1) as it existed at the time of sentencing). Welch, 136 S. Ct. at 1265 (emphasis added) (quoting United States v. U.S. Coin & Currency, 401 U.S. 715, 724 (1971)).

Moreover, although available sentences are technically controlled by statute, the Sentencing Guidelines hardly represent a mere suggestion to courts about the proper sentences defendants should receive. "The federal system adopts procedural measures intended to make the Sentencing Guidelines the lodestone of sentencing." Peugh v. United States, 133 S. Ct. 2072, 2084 (2013). This was even more true when Hubbard was sentenced in 1989 as United States v. Booker, 543 U.S. 220 (2005), had not yet been decided and the Sentencing Guidelines were still being treated as mandatory. The government points out that errors in calculating the appropriate Sentencing Guidelines range are procedural, Peugh, 133 S. Ct. at 2080, but fails to address the Supreme Court's express description of the

20

Sentencing Guidelines as "the substantive 'formula' used to calculate the applicable sentencing range," id. at 2088 (quoting Cal. Dep't of Corr. v. Morales, 514 U.S. 499, 505 (1995)) (quotation marks omitted); see also Molina-Martinez v. United States, 136 S. Ct. 1338, 1345 (2016) ("The Guidelines' central role in sentencing means that an error related to the Guidelines can be particularly serious.").

Just as in Johnson, invalidation of § 16(b) would have "nothing to do with the range of permissible methods a court might use to determine whether a defendant should be sentenced" as a career offender. Welch, 136 S. Ct. at 1265. The Welch Court noted that Johnson "did not, for example, allocate decisionmaking authority between judge and jury, or regulate the evidence that the court could consider in making its decision," and that it was therefore not procedural. Id. (citations and quotation marks omitted). The same would be equally true in an application of Johnson to the Sentencing Guidelines, and thus we are compelled to find that "[b]y the same logic, Johnson is not a procedural decision." Id.

IV.

Because application of Johnson to § 16(b) as incorporated into the Sentencing Guidelines might render the career-offender residual clause that was applicable at the time Hubbard was

21

sentenced unconstitutional, and because the rule in <u>Johnson</u> is substantive with respect to its application to the Sentencing Guidelines and therefore applies retroactively, this Court grants Hubbard's request for authorization to file a successive § 2255 motion.

<u>MOTION GRANTED</u>